C & K INVESTMENTS, Ken D. Parr a/k/a Kenneth Darwin Parr, Sr., Corine Thornton Parr, and Parr Family Limited Partnership d/b/a C & K Investments, Appellants,

v.

FIESTA GROUP, INC., Appellee.

No. 01–05–01113–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 2007.

Mitchell Buchman, George, Buchman & Leigh, P.C., Michael C. O'Connor, O'Connor, Craig, Gould & Evans, P.C., Houston, TX, for C & K Investments.

Thomas Bray, Law Office of Thomas R. Bray, Edward J. Hennessy, Randall D. Wilkins, Hennessy, Garner & Barth, Houston, TX, for Fiesta Group, Inc.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

TERRY JENNINGS, Justice.

Appellants/cross-appellees, C & K Investments, Ken D. Parr also known as Kenneth Darwin Parr, Sr., Corine Thornton Parr, and Parr Family Limited Partnership doing business as C & K Investments (the "Partnership") (collectively "the Parr defendants"), challenge the trial court's judgment, rendered after a jury verdict, awarding appellee/cross-appellant, Fiesta Group, Inc. ("Fiesta"), damages and attorneys' fees for the Parr defendants' contracting for, charging, and receiving

usurious interest in violation of the Texas Finance Code.[1]

In nine points of error, the Parr defendants contend that the evidence is legally and factually insufficient to support the jury's findings that the Partnership and Ken and Corine, as general partners, contracted for, charged, or received usurious interest; the judgment of $92,245.23 against the Partnership and Ken and Corine for charging usurious interest in violation of section 305.001 of the Finance Code; the judgment of $101,400 against the Partnership and Ken and Corine for charging and receiving usurious interest in violation of section 305.002 of the Finance Code; the judgment of $238,178.46 against Ken for contracting for usurious interest in violation of section 305.001 of the Finance Code; and the trial court's conditional award of appellate attorneys' fees to Fiesta.

In its first two cross-issues, Fiesta contends that its wrongful foreclosure claim was a separate cause of action for compensatory damages and not cumulative of its usury claim and that the trial court erred in dismissing its wrongful foreclosure claim without giving it the opportunity to amend its pleadings. In its third cross-issue, Fiesta contends that it "is entitled to the statutory post-judgment interest rate."

We affirm in part, reverse and render in part, and reverse and remand in part.

### Factual and Procedural Background

Fiesta sued the Parr defendants for usury and wrongful foreclosure, alleging that Ken made two loans to Fiesta and that Ken required Fiesta to return a portion of the loan proceeds upon funding "as a condition" of making the loans. The loans were secured by properties owned by Fiesta and were evidenced by separate notes.

Ken eventually assigned the notes to the Partnership. Fiesta later defaulted, and the Partnership accelerated the notes and foreclosed on Fiesta's properties. In its usury claim, Fiesta alleged that the Parr defendants "contracted for, charged and/or received interest and other charges" in excess of the amount authorized by law. Fiesta sought statutory penalties for the Parr defendants' violation of the Finance Code.

The trial court dismissed Fiesta's wrongful foreclosure claim, and Fiesta's usury claim was tried to a jury. The basic facts relevant to this appeal, which were established by the testimony of Ken Parr and Nicholas Rocha, Fiesta's president, and other documentary evidence presented at trial, are largely undisputed. On December 30, 1999, Ken made the first of two loans to Fiesta, evidenced by a "balloon note" of the same date. The note, with an interest rate of 18%, was executed by Rocha on behalf of Fiesta and payable to Ken, the principal amount was $174,000, and the original term was December 30, 1999 to December 30, 2004. It required monthly payments of $2,802.13, beginning on January 30, 2000 and ending in a balloon payment on December 30, 2004, and the loan was secured by a deed of trust in multiple properties owned by Fiesta.

On February 3, 2000, Ken made the second of two loans to Fiesta, evidenced by a "real estate lien note" of the same date. The note, with an interest rate of 18%, was executed by Rocha on behalf of Fiesta and payable to Ken, the principal amount was $101,400, and the original term was February 3, 2000 to February 3, 2007. It required monthly payments of $1,632.97, beginning on March 3, 2000 and ending in a balloon payment on February 3, 2007, and

1. *See* TEX. FIN.CODE ANN. §§ 305.001, 305.002, 305.005 (Vernon Supp.2006).

the loan was secured by a deed of trust in multiple properties owned by Fiesta.

Following each closing, Fiesta began making payments to Ken on each loan. On April 18, 2000, Ken assigned both notes to the Partnership, whose general partners were Ken and Corine. After the assignment, Fiesta defaulted on both loans. The Partnership sent Fiesta a notice of default and acceleration. Fiesta did not cure the default, and, on December 11, 2000, the Partnership sent Fiesta a notice of acceleration. The Partnership accelerated the maturity of both notes and provided notice of foreclosure. As stated in the Parr defendants' answers to interrogatories, which were introduced into evidence, the Parr defendants claimed that on the date of acceleration, the principal due on the first note was $172,593.03, plus interest of $11,409.76, and that the principal due on the second note was $100,702.49, plus interest of $6,458.42. Trustees deeds, which were introduced into evidence, established that the properties secured by the first and second notes were sold at a public sale on May 1, 2001, and that the sales proceeds equaled the balances due on both notes. Ken maintained a record of the payments made by Fiesta under each loan, which was introduced into evidence. Ken's record showed that Ken credited Fiesta's payments against the full face amount of the principal.

The specific evidence giving rise to the usury claims was disputed at trial. Rocha testified that as a condition for both loans, Ken told him that "he would charge [ ] 18%" and that "it would be a 10% fee for him to do the deal." Rocha, who stated that he was confused by the condition for the 10% fee, questioned why he was required to "giv[e] back ten," but ultimately agreed to the condition in light of his need for funds. Ken described the payments as a "fee," "commission," or "equity." The first loan closed on December 30, 1999, and, in light of the front-end payments, Rocha received only "a portion" of the principal. Pursuant to Ken's condition, Rocha instructed the title company to make two checks in the amount of $9,000 each, for a total of $18,000. Rocha then endorsed the checks "over to" Ken and gave them to him. Consequently, Fiesta actually received only $156,000 of the $174,000 stated principal of the loan. When Rocha asked Ken how he planned to cash the checks, Ken told him that he had connections at the bank. Fiesta introduced into evidence copies of both $9,000 checks, which were dated December 30, 1999, and made payable to and endorsed by Rocha.

In regard to the second loan for $101,400, Rocha testified that he and Ken followed a similar course of conduct. As "a prerequisite to the deal," Ken "wanted 10% back under the table." At the second loan's closing on February 3, 2000, Rocha had the title company make two checks in the amount of $5,070 each, for a total of $10,140. Rocha then endorsed these checks and gave them to Ken. Consequently, Fiesta actually received only $91,260 of the $101,400 stated principal of the loan. The $5,070 checks, which were also both introduced into evidence, were dated February 3, 2000, and made payable to and endorsed by Rocha.

Contrary to Rocha's testimony, Ken denied receiving the front-end payments at the closings. Ken agreed, however, that Rocha's endorsement and Ken's bank account numbers appeared on the back of the checks and that the checks were cashed or presented at Ken's bank shortly after the closings. However, Rocha testified that the bank account numbers did not appear on the checks at the closings and that he had no knowledge of Ken's bank account numbers. Fiesta asserted, thus,

that Ken's bank account numbers were placed on the checks by or at the direction of Ken and that Ken received the proceeds from the checks. Ken also agreed that he was familiar with banking regulations requiring banks to take certain reporting measures if checks in excess of $10,000 are cashed. Fiesta used this admission to suggest that Ken intentionally structured the transactions to avoid reporting the payments.

Although the parties presented conflicting testimony on the occurrence of the front-end payments, on appeal, Ken does not challenge the jury's finding that "as a condition to making the loans" he "request[ed] and receive[d] the proceeds" from all four checks. The record established that, despite these "front-end" payments, Fiesta made its monthly payments in accordance with the terms of the notes and that Ken and the Partnership credited Fiesta's monthly payments against the full face amount of the notes. The record further established that as a result of its foreclosure on Fiesta's properties, the Partnership received all amounts due on the notes, including unpaid principal and interest, based on the full face amount of the notes and without any credit for the front-end payments.

At the conclusion of the trial, the jury found that Ken requested and received the proceeds from the checks "as a condition to making the loans," the loans were accelerated on December 11, 2000, and Ken, both individually and as a general partner, and the Partnership contracted for, charged, or received interest greater than the amount authorized by law. Based on these findings, the trial court determined, as a matter of law, the applicable statutory usury penalties and the amounts of those penalties. *See Duggan v. Marshall,* 7 S.W.3d 888, 892 (Tex.App.-Houston [1st Dist.] 1999, no pet.) ("When usury is

properly pleaded and supported by the evidence, then the measure of damages is a matter of law, and the court has the duty to apply the proper measure of damages."). The trial court signed a final judgment awarding Fiesta (1) $238,178.46 from Ken for "contracting for" usurious interest in violation of section 305.001, (2) $92,245.23 from the Partnership, Ken, and Corine, jointly and severally, for "charging" usurious interest in violation of section 305.001, and (3) $101,400 from the Partnership, Ken, and Corine, jointly and severally, for "charging" and "receiving" usurious interest in violation of section 305.002.

## Standard of Review

We will sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005). In conducting a legal sufficiency review, a court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *Id.* at 822. If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). However, if

the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 822; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822.

In conducting a factual sufficiency review, we must consider, weigh, and examine all of the evidence that supports or contradicts the jury's determination. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *London v. London*, 192 S.W.3d 6, 14–15 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). We may set aside the verdict only if the evidence that supports the jury's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Steinberg v. Comm'n for Lawyer Discipline*, 180 S.W.3d 352, 355 (Tex. App.-Dallas 2005, no pet.); *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 769 (Tex. App.-Houston [14th Dist.] 2004, no pet.).

### Usury

■ The essential elements of a usurious transaction are "(1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 96 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). "Usury statutes are penal in nature and should be strictly construed." *Id.* "The purpose of the usury statute is to penalize those who intentionally charge an interest in excess of that allowed by law." *Pentico v. Mad–Wayler, Inc.*, 964 S.W.2d 708, 714 (Tex.App.-Cor-

pus Christi 1998, pet. denied). "When construing a contract under a usury claim, courts presume the parties intended a nonusurious contract." *Anglo–Dutch Petroleum Int'l, Inc.*, 193 S.W.3d at 96.

### Contracting for Usurious Interest

■ In their sixth and seventh points of error, the Parr defendants argue that the trial court erred in entering the judgment in the amount of $238,178.46 against Ken for contracting for usurious interest in violation of section 305.001 because the evidence is legally and factually insufficient to support the judgment as the two notes are not usurious on their face and contain usury savings clauses. The Parr defendants assert that, in light of the fact that the usury claims arise from Ken's receipt of fees and commissions, this case should be considered "a charging or receiving case." Alternatively, the Parr defendants assert that the amount of interest contracted for was not properly "spread" and that the interest should have been spread through the date of the foreclosure sale rather than the date of the loans' original maturity. They suggest, thus, that the award should be reduced to $87,773.76.

The Parr defendants dispute only the sufficiency of the evidence to support the third element, i.e., the exaction of usurious interest. The Finance Code defines "interest" as "compensation for the use, forbearance, or detention of money" and "usurious interest" as "interest that exceeds the applicable maximum amount allowed by law." TEX. FIN.CODE ANN. § 301.002(a)(4), (17) (Vernon 2006). The parties agree that 18% was the maximum interest rate allowed by law, and the jury was instructed that "the rate of 18% is the maximum rate allowed by law." *See id.* § 303.009 (Vernon 2006).

The Finance Code provides various penalties and remedies for contracting for,

charging, or receiving usurious interest. *See id.* §§ 305.001–.105 (Vernon 2006). The version of section 305.001 in effect at the time of trial stated,

> (a) A creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of:
>
> > (1) three times the amount computed by subtracting the amount of interest allowed by law from the total amount of interest contracted for, charged, or received; or
> >
> > (2) $2,000 or 20 percent of the amount of the principal, whichever is less.

Act of April 23, 1999, 76th Leg., R.S., ch. 62, § 7.18, sec. 305.001, 1999 Tex. Gen. Laws 127, 233 (amended 2005) (current version at Tex. Fin.Code Ann. § 305.001 (Vernon Supp.2006)) [hereinafter referred to as former section 305.001].[2]

Here, the jury found that Ken requested and received the proceeds from the checks "as a condition to making the loans," and Ken has not challenged the sufficiency of evidence to support this finding. In regard to the first loan, Jay Dale, a certified public accountant, explained that, using the $156,000 actually received by Fiesta as the "true principal" of that loan, which Dale derived after subtracting the front-end payments to Ken from the $174,000 face value of the first note, the amount of interest that would have accrued over the stated term of the first loan on the true principal, from December 30, 1999 to December 30, 2004, calculated at the stated and maximum lawful interest rate of 18%, would have been $123,663.81. *See Jordan v. Aston,* 798 S.W.2d 17, 19–20 (Tex.App.-Houston [1st Dist.] 1990, no writ) ("The true principal, the amount upon which a transaction is tested for usury, is the actual amount of which the borrower had the use, detention, or forbearance.").[3] Dale further explained that using the $174,000 face value of the principal of the first loan, the amount of interest that would have accrued over the stated term of the loan on the face amount, calculated at the stated interest rate of 18%, would have been $167,642.12. As further noted in exhibits presented into evidence and as explained in Dale's testimony, the difference between the interest contracted for based on the face amount of principal of the first note and the interest calculated based on the true principal of the note was $43,978.31. Dale testified that when the true principal of $156,000 is used as the actual value of the loan, the effective interest rate spread over the full term of the loan was 23.85%.

In regard to the second loan, Dale testified that using the $91,260 actually received by Fiesta as the "true principal" of that loan, which Dale derived after subtracting the front-end payments to Ken from the $101,400 face value of the principal of the second note, the amount of interest that would have accrued over the stated term of the loan on the true principal, from February 3, 2000 to February 3, 2007, calculated at the stated lawful maxi-

---

**2.** The 2005 amendments to section 305.001 became effective September 1, 2005. This case was tried prior to this effective date; thus, the former version applies.

**3.** The terms of both notes required crediting the front-end payments to reduce the principal of the loans. The first note provided, "The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note." The second note provided, "Interest will be calculated on the unpaid principal to the date of each installment period. Payments will be credited first to the accrued interest and then to reduction of principal." As no interest accrued at closing, the front-end payments should have reduced the principal.

mum interest rate of 18%, would have been $93,287.84. Dale explained that using the $101,400 face amount of the principal of the second note, the amount of interest that would have accrued over the stated term of the loan on the face amount, calculated at the interest rate of 18%, would have been $128,702.71. As noted in exhibits presented into evidence and as explained in Dale's testimony, the difference between the interest contracted for based on the face value of the principal of the second note and the interest calculated based on the true principal of that note was $35,414.87. Dale testified that when the true principal of $91,260 is used as the actual value of the loan, the effective interest rate spread over the full term of the loan was 22.88%.

We hold, based on the finding that Ken requested and received the proceeds from the four checks that Rocha endorsed over to him "as a condition to making the loans" and the above evidence, including Dale's testimony that the effective interest rates on both loans exceeded 18% and Dale's calculations and exhibits, that the evidence is both legally and factually sufficient to support the trial court's final judgment of $238,178.46 against Ken for contracting for usurious interest in violation of section 305.001(a)(1). The trial court made this award pursuant to section 305.001 by multiplying, by three times, the difference between the total amount of interest actually contracted for on both loans and the amount of interest allowed by law. *See* former section 305.001(a)(1). Accordingly, we further hold that the trial court did not err in entering judgment against Ken in the amount of $238,178.46.

■ The Parr defendants argue that because the notes are non-usurious on their face, the evidence supporting this penalty is legally or factually insufficient. However, the Texas Supreme Court has indicated that when an otherwise non-usurious note is accompanied by a condition to pay a fee or commission that effectively reduces the net amount of money actually loaned, usury may result. *See First State Bank of Bedford v. Miller,* 563 S.W.2d 572, 575 (Tex.1978); *Nevels v. Harris,* 129 Tex. 190, 196, 102 S.W.2d 1046, 1049 (1937).

In *Miller,* a lender agreed to loan $70,000, conditioned on the borrower's agreement to leave $14,000 of the loan proceeds in a non-interest bearing account "under escrow or freeze" to cover the first two years' interest payments. 563 S.W.2d at 573. Although the condition apparently was not contained in the note itself, it was reflected in the loan work sheet and was supported by other evidence. *Id.* The supreme court recognized that "[i]f the true principal sum of the loan had been $70,000, the [ ] interest charge would not have been usurious." *Id.* at 575. However, the court recited the "well established rule" that "the test for usury [should] be applied to the net amount of money of which the borrower had use, detention or forbearance." *Id.* The court further stated, "in cash loan transactions from which the lender deducts interest, fees, commissions or other front-end charges, the amount of dollars actually received or retained by the borrower is held to be the 'true' principal" and that "[i]n such cases the amount of the stated principal is reduced accordingly in testing for usury." *Id.* (citation omitted); *see also Gibson v. Drew Mortg. Co.,* 696 S.W.2d 211, 212–13 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). The supreme court calculated the difference between the maximum lawful yield on the face value of the loan and the yield on the true principal and affirmed an award of usury penalties against the lender for "contracting for" and "charging" usurious interest. *Miller,* 563 S.W.2d at 575. Similarly, in *Nevels,* the

stated amount of a note was $6,400, but the lender withheld $320 as a fee for making the loan. 129 Tex. at 196, 102 S.W.2d at 1049. The supreme court considered the "actual principal" of the loan of $6,080 in determining whether the interest charged was usurious. 129 Tex. at 196–97, 102 S.W.2d at 1049.

As in *Miller* and *Nevels,* although the notes in the instant case were non-usurious on their face, Fiesta presented evidence that the loans were conditioned on the immediate payment of a fee of approximately 10% of the face amount of both loans, thus effectively reducing the true principal of the loans and increasing the effective interest rate above the maximum lawful rate of 18%, and resulting in a contract for usurious interest. In support of their argument that the notes here are not usurious on their face, the Parr defendants rely on *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260 (Tex.1977), and *Stacks v. E. Dallas Clinic,* 409 S.W.2d 842 (Tex.1966). However, *Windhorst* and *Stacks* do not support the Parr defendants' argument because neither case addresses the payment of a commission or a fee as a condition to a loan similar to the payments made in this case. *Miller* also flatly contradicts the Parr defendants' argument that the "contracting for" claim against Ken should be "referred to as a charging or receiving case," because, in that case, the lender was held liable for contracting for usurious interest based on the lender's condition to freeze a portion of the face amount of the note. 563 S.W.2d at 575.

▮▮▮ Also, in regard to the Parr defendants' argument that the savings clauses in the notes preclude the award of damages against Ken for "contracting for" usurious interest,[4] we note that Texas courts "have acknowledged the validity of usury savings clauses and, in appropriate circumstances, enforced such clauses to defeat a violation of the usury laws." *See Armstrong v. Steppes Apartments, Ltd.,* 57 S.W.3d 37, 46 (Tex.App.-Fort Worth 2001, pet. denied). However, the mere presence of a usury savings clause "will not rescue a transaction that is necessarily usurious by its explicit terms." *Id.; see also Kaplan v. Tiffany Dev. Corp.,* 69 S.W.3d 212, 220 (Tex.App.-Corpus Christi 2001, no pet.). This rule prevents a creditor from freely contracting for usurious interest knowing that for the few debtors who complain, the creditor will escape penalty by mere reference to a savings clause and refund of the usurious amounts. *Kaplan,* 69 S.W.3d at 220. Furthermore, the effect of a usury savings clause is largely a question of construing the terms of the clause as a whole and in light of the circumstances surrounding the transaction. *Armstrong,* 57 S.W.3d at 46.

Based on these guidelines, we conclude that the savings clauses in the notes do not preclude judgment against Ken. First, although the notes are not usurious on their face, Fiesta presented evidence that its payment of fees to Ken was contemporaneous with the parties' execution of the notes, and the jury found that Ken conditioned the loans on the payment of these fees. Fiesta also presented evidence that the checks were signed on the date of the closings, were endorsed by Rocha, and were negotiated or presented by Ken shortly thereafter at his personal bank, as

---

**4.** The Parr defendants make reference to the savings-clause defense in a single sentence, without any discussion of the terms of the notes' savings clauses or their applicability to the facts of this case. The Parr defendants also do not discuss any relevant authority regarding the legal effect of the savings clauses. *See* Tex.R.App. P. 38.1(h). Accordingly, in responding to the Parr defendants' argument, we address only the general effect of a savings clause.

demonstrated by Ken's bank account numbers appearing on the checks. Furthermore, in considering the surrounding circumstances, we note that Fiesta presented evidence suggesting that Ken structured the transactions with an intent to avoid reporting the payments. *See id.* at 47 (stating that lender cannot avoid consequences of contracting for usurious interest rate simply by including savings clause in contract). Additionally, there is no evidence that Ken or the Partnership ever attempted to effectuate the savings clauses, and they cannot now seek the clauses' protection in this appeal. *Id.*

■■■ Finally, Ken argues that the amount of interest contracted for was wrongly "spread over the entire term of the loan" instead of spread through the date of the foreclosure sale. Section 302.101 provides,

 (a) To determine whether a loan secured in any part by an interest in real property, including a lien, mortgage, or security interest, is usurious, the interest rate is computed by amortizing or spreading, using the actuarial method during the stated term of the loan, all interest at any time contracted for, charged, or received in connection with the loan.

 (b) If a loan described by Subsection (a) is paid in full before the end of the stated term of the loan and the amount of interest received for the period that the loan exists exceeds the amount that produces the maximum rate authorized by law for that period, the lender shall:

 (1) refund the amount of the excess to the borrower; or

 (2) credit the amount of the excess against amounts owing under the loan.

 (c) A lender who complies with Subsection (b) is not subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum rate authorized.

TEX. FIN.CODE ANN. § 302.101 (Vernon 2006).

Section 302.101 plainly states that interest should be spread throughout the "stated term of the loan." *Id.* The claim against Ken arises from the allegation that he "contracted for" usurious interest. Thus, Fiesta presented evidence properly spreading the interest under the stated term of the loans, as those terms existed at the time Ken engaged in the penalized conduct, i.e., at the time he contracted for the loans. We see no reason, and we have discovered no authority, to suggest that, in a contracting claim, it would be proper, to perform a spreading analysis through the date of a foreclosure sale. That simply is neither what Ken "contracted for," nor what the language in section 305.001 penalizes.

We overrule the Parr defendants' sixth and seventh points of error.

### Charging and Receiving Usurious Interest

■■■ In their first and eighth points of error, the Parr defendants contend that the evidence is legally and factually insufficient to support the jury's findings that the Partnership and Ken and Corine, as general partners, contracted for, charged, or received usurious interest.[5] In their sec-

---

5. Having held, in our consideration of the Parr defendants' sixth and seventh points of error, that the evidence is both legally and factually sufficient to support the trial court's final judgment of $238,178.46 against Ken for contracting for usurious interest in violation of section 305.001(a)(1), we have necessarily disposed of the portion of the Parr defendants' first and eighth points of error pertaining to the jury's findings against Ken. We

ond and third points of error, the Parr defendants argue that the trial court erred in entering judgment of $92,245.23 against the Partnership and Ken and Corine for charging usurious interest in violation of section 305.001 because the evidence is legally and factually insufficient to support the judgment.[6] In their fourth and fifth points of error, the Parr defendants contend that the trial court erred in entering the judgment of $101,400 against the Partnership and Ken and Corine for charging and receiving usurious interest in violation of section 305.002 because the evidence is legally and factually insufficient to support the judgment.[7]

Throughout these points of error, the Parr defendants argue that there is no evidence or insufficient evidence that the Partnership charged or received usurious interest because Dale, the certified public accountant who presented Fiesta's sole calculations and evidence on the amount of interest charged and received by the Parr defendants, included in his calculations the

interest charged and received by Ken before the loans were assigned to the Partnership and failed to distinguish between the interest charged and received by Ken and the Partnership. The Parr defendants assert that there is no evidence that the Partnership "received any benefit" from the payments made to Ken before the assignment. They also assert that Dale should also have made a charging calculation by spreading interest "through the foreclosure of May 1, 2001," rather than through the date of acceleration.

As noted above, the version of section 305.001 in effect at the time of trial stated, in relevant part, that "[a] creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of: (1) three times the amount computed by subtracting the amount of interest allowed by law from the total amount of interest contracted for, charged, or received; or (2)

---

address the remaining portion of the first and eighth points of error here.

6. The Parr defendants make two preliminary assertions, which we briefly address. First, the Parr defendants assert that section 305.001 does not provide a statutory penalty for charging usurious interest. However, the version of section 305.001 in effect at the time of trial applied to a "a creditor who contracts for, charges, or receives interest that is greater than the amount authorized." See former section 305.001.

Second, the Parr defendants complain that there is no evidence or insufficient evidence to support a finding that the Partnership contracted for usurious interest. However, the jury found that the Partnership "contracted for, charged, or received usurious interest" and the trial court imposed liability against the Partnership only for charging and receiving usurious interest.

7. As we have previously noted, the trial court's "charging" and "receiving" penalties

were imposed against the Partnership and Ken and Corine jointly and severally. Although the judgment does not expressly address the issue, it appears that the penalties were imposed against Ken and Corine in their capacity as general partners pursuant to the general rule that a partner is liable jointly and severally for all debts and obligations of the partnership. See TEX.REV.CIV. STAT. ANN. art. 6132b–3.04 (Vernon Supp.2006) ("Except as provided by Section 3.07 or 3.08(a), all partners are liable jointly and severally for all debts and obligations of the partnership unless otherwise agreed by the claimant or provided by law."). The parties also agree that these penalties were imposed against Ken and Corine in their capacity as general partners, as opposed to the "contracting for" penalty, which was imposed against Ken in his individual capacity. Neither party has challenged the imposition of these penalties under these partnership principles. Thus, although we recognize the terms of the final judgment, we will refer to the "charging" and "receiving" penalties as being imposed against the Partnership.

$2,000 or 20 percent of the amount of the principal, whichever is less." *See* former section 305.001. Section 305.002 provides,

 (a) In addition to the amount determined under Section 305.001, a creditor who charges and receives interest that is greater than twice the amount authorized by this subtitle is liable to the obligor for:

 (1) the principal amount on which the interest is charged and received; and

 (2) the interest and all other amounts charged and received.

Tex. Fin.Code Ann. § 305.002 (Vernon Supp.2006).

In regard to the first loan, Dale testified, supported by exhibits introduced into evidence, that the total amount of interest that had been charged from December 30, 1999 to December 11, 2000, the date of acceleration, based on the full face amount of the principal of the loan, was $47,475.67. Dale explained that the amount of interest that could have been charged at 18% based on the true principal of $156,000 was $27,880.29. The difference between the amount of interest charged during the term of the loan and the maximum amount that would have been authorized by law was $19,595.38. Dale stated that the amount of interest charged on the loan, when applied to the true principal and when spread over the term of the loan, created an effective interest rate of 35.4%.

In regard to the second loan, Dale testified, supported by exhibits introduced into evidence, that the total amount of interest that had been charged from February 3, 2000 to December 11, 2000, the date of acceleration, based on the full face amount of the principal of the loan, was $25,661.61. Dale explained that the amount of interest that could have been charged at 18% based on the true principal of $91,260 was $14,513.58. The difference between the amount of interest charged during this period and the maximum amount authorized by law was $11,153.03. Dale stated that the amount of interest actually charged on the loan, when applied to the true principal and when spread over the term of the loan, created an effective interest rate of 36.59%.

Based on the unchallenged finding that the loans were accelerated on December 11, 2000, and the other evidence presented by Fiesta, including Dale's testimony that the effective interest rates on the true principal of both loans exceeded 18%, as well as Dale's calculations detailed above, the trial court signed a final judgment awarding Fiesta, under section 305.001(a)(1), $92,245.23 for the Partnership's charging of usurious interest. The trial court arrived at this award by applying the penalty provisions in section 305.001 and multiplying, by three times, $30,748.41, which, as Dale testified, is the difference between the total amount of interest actually charged on the loans and the amount of interest allowed by law. *See* former section 305.001. Furthermore, based on Dale's testimony that the effective interest rate for the second loan was 36.59%, more than twice the amount allowed by law, the trial court also awarded Fiesta, under section 305.002, $101,400, for the Partnership's charging and receiving usurious interest. The trial court arrived at this figure by awarding Fiesta the full face value of the principal of the second loan. *See* Tex. Fin.Code Ann. § 305.002.

*Assignment of the Loans*

 In Texas, an assignee of a note may be liable for statutory penalties for usury if it is shown that the assignee has knowledge or notice that the interest received and collected was usurious. *Fires v. Kinney–Shotts Inv. Co.*, 59 S.W.2d 827, 827 (Tex. Comm'n App.1933, holding approved); *N. Am. Acceptance Corp. v. War-*

*ren,* 451 S.W.2d 921, 925 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.); *Mossler Acceptance Co. v. Fields,* 241 S.W.2d 255, 256 (Tex.Civ.App.-Fort Worth 1951, no writ). Thus, to the extent that the Partnership argues that it cannot be held liable for charging or receiving usurious interest because it was merely an assignee of the notes, the argument fails. Here, Fiesta presented evidence and the jury found that Ken required the front-end payments as a condition to making both loans. Based on the undisputed evidence that Ken and Corine were the general partners of the Partnership, we conclude that Fiesta presented sufficient evidence that the Partnership was on notice and had knowledge that Ken required the front-end payments as a condition of the loans, the true principal of the loans was less than the amount stated on the face of the notes, the stated interest rate of 18% was not accurate, and the actual interest rate was substantially higher than the stated, maximum lawful rate. Holding otherwise would create an opportunity, even when it is clear, as it is here, that the assignee had knowledge and notice of the usurious nature of the loans at the time of assignment, to evade statutory usury penalties by attempting to assign away liability for those penalties.[8] Accordingly, we hold that the evidence is legally and factually sufficient to support an implied finding that the Partnership had notice and knowledge that it was charging and receiving usurious interest by charging and receiving interest on the full face amount of the notes rather than the true principal of the loans.

We overrule the remaining portion of the Parr defendants' first and eighth points of error.

*Amount of Interest Charged and Received*

In considering the evidence regarding the amount of the interest charged and received, we note that "contracts are tested for usury by spreading the interest over the entire term of the contract." *Armstrong,* 57 S.W.3d at 47 (citing *Tanner Dev. Co. v. Ferguson,* 561 S.W.2d 777, 786 (Tex.1977)); *see also* TEX. FIN.CODE ANN. § 302.101(a) (Vernon 2006) (stating that "interest rate is computed by amortizing or spreading, using the actuarial method during the stated term of the loan, all interest at any time contracted for, charged, or received in connection with the loan"). This is because usury penalties cannot be imposed simply because a loan's interest rate exceeds the statutory limit in a particular year. *Pentico,* 964 S.W.2d at 714 (citing *Tanner Dev. Co.,* 561 S.W.2d at 787); *see also Groseclose v. Rum,* 860 S.W.2d 554, 557 (Tex.App.-Dallas 1993, no writ).

Texas courts have defined "spreading" as "a method of allocating over the life of a loan (or a portion of the loan, in the event the loan maturity is accelerated or the loan is prepaid) charges that the parties them-

---

**8.** *See Lupo v. Equity Collection Serv.,* 808 S.W.2d 122, 124 (Tex.App.-Houston [1st Dist.] 1991, no writ) (rejecting collection agency's argument that since it was not party to original loan transaction, it could not be held liable for usury statutory penalties because "[o]therwise, one who was not a party to the original loan transaction . . . could attempt to collect usurious interest without fear of the penalties for usury"); *Davis v. Boling,* 340 S.W.2d 331, 334 (Tex.Civ.App.-Amarillo 1960, writ ref'd n.r.e.) (stating that burden is on debtor to plead and prove that creditor has "notice or knowledge of the usury in the transaction" when "there is nothing to show upon the face of the note that it is a usurious contract" and there is nothing in record to show creditor "had any notice of any usury"); *Hamor v. Commerce Farm Credit Co.,* 74 S.W.2d 1035, 1038 (Tex.Civ.App.-Amarillo 1934, writ dism'd) (holding that to recover statutory penalty for usury against assignee, plaintiff must prove assignee's knowledge or notice of usurious interest).

selves have called interest or that a court would deem interest regardless of the label given the charge by the parties." *Armstrong,* 57 S.W.3d at 47–48 (citations omitted); *see also Coppedge v. Colonial Sav. & Loan Ass'n,* 721 S.W.2d 933, 937 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) ("When prepayment is made, the interest received is spread over the term during which the borrower actually had use of the funds; the lender must refund or credit any excess interest to the borrower to avoid the statutory penalties."); *Mims v. Fidelity Funding, Inc.,* 307 B.R. 849, 859 (N.D.Tex.2002) (stating that spreading analysis should be performed by comparing maximum amount of interest for which creditor is entitled to lawfully contract, charge, or receive through the acceleration date with total amount of interest actually charged).

Using this analysis, Dale testified that the effective interest rate for the first loan was 35.4% and that the effective interest rate on the second loan was 36.59%. The Partnership responds that the evidence supporting Dale's calculations is legally insufficient because he used an improper loan term and failed to account for the interest charged and received by Ken prior to the assignment.

■■■ We hold that the evidence supporting the amounts of the charging and receiving penalties is legally insufficient. Here, both notes were assigned to the Partnership on April 18, 2000, after Fiesta had made multiple payments to Ken on both notes. These pre-assignment payments, which were both charged and received by Ken, contained, pursuant to the terms of the loans, both a principal and an interest component. However, Fiesta failed to present any evidence of the specific amounts of interest charged and received by Ken and the Partnership respectively both before and after the as-

signment. Fiesta also failed to present evidence on the amounts of interest both creditors legally could have charged and received respectively. Section 305.001 imposes a penalty upon each creditor who charges usurious interest on a loan. *See* former section 305.001(a). Thus, the amount of the penalty to be imposed against each creditor who charges usurious interest on a loan, under the plain terms of the statute, is dependent upon the amount of interest each creditor actually charges and receives. *See id.* The amount of interest actually charged and received by each creditor is therefore critical to the calculation of the appropriate amount of the penalties to be imposed on the violating creditor. *See id.*

As the judgment currently stands, the penalty imposed against the Partnership (and its general partners) for charging usurious interest in violation of section 305.001(a) is calculated based on the full amount of interest charged over the life of the loans by multiple creditors; it does not in any way account for the fact that Ken also charged interest on the loans. Without evidence attributing the amount of interest charged by Ken, there is no evidence under which the trial court could have calculated the appropriate penalty to impose against the Partnership for charging usurious interest in violation of section 305.001. *See Hurley v. Nat'l Bank of Commerce,* 529 S.W.2d 788, 789–91 (Tex. Civ.App.-Dallas 1975, writ ref'd n.r.e.) (noting that maker of allegedly usurious note had assigned note, after date of assignment all payments were made to assignee, and debtor's claim for usury against assignor of note would be limited to interest paid to assignor before date of assignment).

■■■ Similarly, the evidence is also legally insufficient to support the trial court's penalty for the Partnership's

charging and receiving usurious interest more than twice the amount allowed by law under section 305.002. As noted above, Dale included in his calculations the amounts of interest charged and received by Ken before the assignment as well as the amounts of interest charged and received by the Partnership after the assignment. In regard to this penalty, Dale failed to distinguish the amount of principal on which both Ken and the Partnership charged and received the usurious interest in violation of section 305.002. As with section 305.001, we conclude that section 305.002 imposes a penalty against each creditor who charges or receives interest more than twice the amount allowed by law. *See* Tex. Fin.Code Ann. § 305.002. Although, under Dale's analysis, Fiesta would have been entitled to recover from the offending creditors an amount equal to the underlying principal of the second loan on which the usurious interest was

charged and received ($91,260),[9] the amount of principal on which Ken and the Partnership respectively charged and received the interest is critical to the calculation of the amount of the appropriate penalty to be imposed against each creditor under section 305.002. *Id.* § 305.002(a)(1). Without this evidence, there is no basis under which the trial court could have calculated the appropriate penalty to impose against the Partnership under section 305.002.[10]

Fiesta argues that the above analysis is flawed because "[Ken] did not receive any usurious interest prior to the assignment." Fiesta asserts that "for the purpose of determining usury [1] the front end payments must be applied to the principal and [2] the subsequent payments made to [Ken] must be applied first to accrued interest at 18% and then to principal."[11] Fiesta's argument ignores the reality of

9. Additionally, we note that the penalty imposed by the trial court under section 305.002 is problematic because it awards Fiesta the full face amount of the principal of the second note rather than the true principal of the loan, on which the usury calculations are based.

10. The error in the judgment with regard to the charging and receiving penalties is underscored by the fact that, because the Partnership was not the note holder before assignment, there is no evidence that the Partnership charged interest before the assignment and there is no evidence that the Partnership "received" the payments and the accompanying interest component made before the assignment. *See Stacks v. E. Dallas Clinic*, 409 S.W.2d 842, 844 (Tex. 1966) (defining "receiving" to mean "benefitting" from the interest paid).

11. *See* 13 Tex. Jur.3d *Consumer and Borrower Protection* § 80 ("The law does not automatically convert payments of usurious interest into payments of principal but, rather, merely gives the borrower the right to have them so applied.") (citing *Adleson v. B.F. Dittmar Co.*, 124 Tex. 564, 80 S.W.2d 939 (1935)). Although we have not found any recent authority directly rejecting the Parr defendants' sug-

gestion that payments made to Ken should have been applied first to accrued interest at 18% and then to principal, we note that Texas courts have held that the statute of limitations on a debtor's usury claim begins to run at the time an allegedly usurious payment is made. *Hurley v. Nat'l Bank of Commerce*, 529 S.W.2d 788, 790 (Tex.Civ.App.-Dallas 1975, writ ref'd n.r.e.) *Hurley* is relevant to the Parr defendants' argument because the court rejected the debtor's argument that "no cause of action for usury arises so long as the aggregate amount of the payments does not exceed the principal sum originally advanced because the lender may elect to treat all payments up to that time as return of principal and may forego the interest or reduce it to a lawful amount." *Id.* The court further stated, "Such a method of purging usury from interest payments already made" would not be permitted under the relevant federal statute or Texas law. *Id.* Similarly, we can find no authority for the Parr defendants' suggestion that we should recharacterize all of the payments made to Ken to be lawful payments of principal and interest so as to insulate Ken from charging and receiving liability.

the situation. In accordance with the terms of the notes, Fiesta's front-end payments reduced the true principal of the loans. Thereafter, Fiesta made its monthly payments pursuant to the terms of the note to the note holder, first to Ken and then, after assignment, the Partnership, and each of these payments included components of principal and interest. This reduction in principal caused by the front-end payments increased the stated interest rate of 18% to an effective interest rate well above that authorized by law. Thus, both Ken's and the Partnership's subsequent charging and receiving of interest violated the usury laws. Fiesta has failed to clearly explain how only the Partnership would be liable under a charging or receiving theory and how Ken, as a creditor who individually charged and received interest under the notes, would not be liable in an individual capacity for at least a portion of the charging and receiving penalties. Regardless, evidence of the amount of interest charged and received by Ken, and the underlying amount of principal on which the interest was charged and received, is necessary to calculate the appropriate penalties to impose against the Partnership.

Accordingly, we further hold that the trial court erred in entering the judgment of $92,245.23 against the Partnership and Ken and Corine for charging usurious interest in violation of section 305.001 and in entering the judgment of $101,400 against the Partnership and Ken and Corine for charging and receiving usurious interest in violation of section 305.002.

We sustain the Parr defendants' second, third, fourth, and fifth points of error.

### Appellate Attorneys' Fees

In their ninth point of error, the Parr defendants contend that the evidence is legally and factually insufficient to support the conditional award of appellate at-torneys' fees to Fiesta. Fiesta counters that section 305.005 of the Finance Code "requires the court to set and award attorneys' fees."

Tom Bray, Fiesta's attorney, testified as to the number of hours that he expended on the case, his qualifications, and his hourly rate. The Parr defendants ultimately stipulated that the amount of $44,000 was a fair and reasonable amount of attorneys' fees for Fiesta's prosecution of the case. However, there was no stipulation regarding Fiesta's anticipated appellate attorneys' fees, and Fiesta did not offer any testimony regarding its appellate attorneys' fees. Yet, in its final judgment, in addition to the award for the stipulated attorneys' fees for trial, the trial court also awarded Fiesta's reasonable attorneys' fees in the amount of $30,000 in the event that the Parr defendants unsuccessfully appeal, in whole or in part, to the Texas Court of Appeals; $10,000 in the event that the Parr defendants unsuccessfully appeal to the Supreme Court of Texas and their petition for review is denied; and $20,000 in the event that the Parr defendants unsuccessfully appeal to the Supreme Court of Texas and their petition for review is granted.

Section 305.005 provides that "[a] creditor who is liable under Section 305.001 or 305.003 is also liable to the obligor for reasonable attorney's fees set by the court." TEX. FIN.CODE ANN. § 305.005 (Vernon Supp.2006). Although no court has yet addressed the standard or method of proving attorneys' fees under section 305.005, we note that, generally, the party seeking to recover attorneys' fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). Furthermore, it is well settled that the trial court's award of attorneys' fees may include appellate attorneys' fees. *Keith v. Keith*, 221 S.W.3d 156, 169

(Tex.App.-Houston [1st Dist.] 2006, no pet. h.). Thus, we conclude that section 305.005 permits a court to award appellate attorneys' fees.

However, there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorneys' fees. *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex.App.-Houston [1st Dist.] 1983, no writ); *Jones v. Am. Airlines, Inc.*, 131 S.W.3d 261, 271 (Tex.App.-Fort Worth 2004, no pet.); *see also Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex.App.-Austin 2000, pet. denied) ("A court does not have authority to adjudicate the reasonableness of attorneys' fees on judicial knowledge without the benefit of evidence."). Here, there is no evidence to support the award of Fiesta's reasonable appellate attorneys' fees. Accordingly, we hold that the evidence is legally insufficient to support the trial court's conditional award of appellate attorneys' fees to Fiesta.

Fiesta argues that the trial court was permitted to take judicial notice of the usual and customary attorneys' fees and of the contents of the case file without receiving further evidence, relying on *Superior Ironworks, Inc. v. Roll Form Prods., Inc.*, 789 S.W.2d 430, 431 (Tex.App.-Houston [1st Dist.] 1990, no writ). However, the award of attorneys' fees in *Superior Ironworks, Inc.* was predicated on section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1997) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract."). As the *Superior Ironworks* court noted, section 38.004 specifically authorizes a trial court to take judicial notice of the usual and customary attorneys' fees and of the contents of the case file without receiving further evidence in certain circumstances. 789 S.W.2d at 431. However, the award of appellate attorneys' fees in this case is predicated on section 305.005 of the Finance Code, not section 38.001 of the Civil Practice and Remedies Code. This court has previously held that section 38.004 cannot be used to justify the reasonableness of attorneys' fees recovered outside of section 38.001. *See Valdez v. Valdez*, 930 S.W.2d 725, 732–33 (Tex.App.-Houston [1st Dist.] 1996, no writ); *see also London v. London*, 94 S.W.3d 139, 147–49 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding that trial courts may not use section 38.004 to take judicial notice of reasonableness of attorneys' fees awarded under statute other than section 38.001).

We sustain the Parr defendants' ninth point of error.

### Wrongful Foreclosure

In its first cross-issue, Fiesta argues that because its wrongful foreclosure claim was a separate cause of action for actual compensatory damages, the claim was not cumulative of its claim for usury penalties. In its second cross-issue, Fiesta argues that the trial court erred in dismissing its wrongful foreclosure claim without first giving it the opportunity to amend its pleadings. The Parr defendants counter that Fiesta waived its right to assert its wrongful foreclosure claim and, alternatively, that Fiesta's wrongful foreclosure claim "was not a separate cause of action for actual damages" and "was precluded by section 305.007 of the Finance Code."

Fiesta alleged in its petition that the Parr defendants contracted for, charged,

and received usurious interest and that the Parr defendants' foreclosure of its properties was wrongful. In its wrongful foreclosure claim, Fiesta sought to set aside, cancel, and declare void the deeds obtained as a result of the foreclosure and also sought a declaration that Fiesta was the owner of the properties. Fiesta also sought compensatory damages for "lost rents and profits during the periods for which [it] was wrongfully denied possession" of the properties and, in the alternative, damages "for the fair market value of [its] equity interest" in the properties.

Before trial, the Parr defendants filed a "motion to dismiss [Fiesta's] claims and damages relating to wrongful foreclosure," asserting that section 305.007 of the Finance Code prohibited Fiesta from seeking "to recover common law damages for violation of the Texas usury laws." Although the record does not contain a separate order granting the Parr defendants' motion to dismiss, the trial court recited in its final judgment that "[p]rior to receiving evidence" it had considered and granted the Parr defendants' motion to dismiss Fiesta's wrongful foreclosure claim and had excluded "all evidence relating thereto."

▮ We first address the Parr defendants' argument that Fiesta waived its right to assert its wrongful foreclosure claim. The Parr defendants assert that "the trial court did not rule on the motion before or during trial," Fiesta failed to object to the Parr defendants' motion to dismiss, and "there is no record that the court made any ruling before or during the trial."

The record indicates that after being served with the Parr defendants' motion to dismiss on the first day of trial, Fiesta requested additional time to respond to the motion. The trial court agreed to Fiesta's request, and Fiesta further agreed not to mention the issue during voir dire. The only other reference to Fiesta's wrongful foreclosure claim is contained in the final judgment, and there is no testimony in the record showing that the motion to dismiss was again discussed before the presentation of evidence. However, the final judgment plainly states that the trial court considered and granted the Parr defendants' motion to dismiss prior to receiving evidence and, thereby, excluded all evidence relating to the wrongful foreclosure claim. Thus, the Parr defendants' argument that Fiesta "voluntarily waived this claim by not presenting any argument or evidence" is directly contradicted by the final judgment's recitation regarding that claim. To the extent that the Parr defendants are suggesting that the final judgment was incorrect in this regard, the Parr defendants have failed to identify any post-judgment motion in which they informed the court of this alleged error. We hold that Fiesta did not waive its right to assert its wrongful foreclosure claim.

▮ In regard to the merits of the Parr defendants' motion to dismiss Fiesta's wrongful foreclosure claim, the motion was based solely on section 305.007 of the Finance Code, which provides,

The penalties provided by this chapter are the only penalties for violation of this subtitle for contracting for, charging, or receiving interest in an amount that produces a rate in excess of the maximum rate allowed by law. Common law penalties do not apply.

Tex. Fin.Code Ann. § 305.007 (Vernon Supp.2006). The Parr defendants argue that because Fiesta's wrongful foreclosure claim "is clearly an attempt to recover common law damages for violation of the Texas usury laws" and "there is no other factual basis for this claim," section 305.007 bars the claim.

For a sale under a deed of trust to be valid, the terms set out in the deed of trust must be strictly followed. *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex.1982); *see also League City State Bank v. Mares*, 427 S.W.2d 336, 340 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.) (stating that foreclosure was wrongful because plaintiffs were current in payment on note at date of attempted acceleration and foreclosure). Failure to properly foreclose on property gives rise to a cause of action for either the return of the property or damages. *UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 610 (Tex.App.-Corpus Christi 2005, pet. denied) (citing *Univ. Sav. Ass'n*, 644 S.W.2d at 706). The correct measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness. *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex.1986); *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 375 (Tex.App.-Houston [14th Dist.] 1989, writ denied).

The Parr defendants do not refer us to any authority for the proposition that section 305.007 bars a claim for wrongful foreclosure. A plain reading of the section reveals that only common law "penalties" are barred, not common law claims for actual damages. Tex. Fin.Code Ann. § 305.007. In its wrongful foreclosure claim, Fiesta sought a declaration that it was the owner of the properties or, in the alternative, compensatory damages for lost rents and profits or damages related to its equity interest. Section 305.007 expressly bars only "common law penalties" for usury. *Id.* Here, Fiesta's claim for wrongful

foreclosure is not a common law penalty precluded by section 305.007, but is rather an alternative cause of action with different remedies.

Furthermore, a review of the types of claims that section 305.007 has been held to preclude indicate that a claim for wrongful foreclosure would not fall within the scope of the statute. For example, in *Nolen v. Nucentrix Broadband Networks Inc.*, the United States Court of Appeals for the Fifth Circuit stated that a plaintiff's unjust enrichment claim for restitution of usurious late fees was precluded by section 305.007 because "restitution for unjust enrichment" was a "common law penalty" expressly prohibited by the statute. *See* 293 F.3d 926, 928 n. 1 (5th Cir.2002); *see also Gallardo v. TCI Cablevision of Tex., Inc.*, No. 13–02–460–CV, 2004 WL 1932662, at *3 (Tex.App.-Corpus Christi Aug.31, 2004, no pet.) (mem.op.) (finding section 305.007 precluded action seeking declaration that penalty clauses were unenforceable and late fees should be returned).

Accordingly, we hold that the trial court erred in granting the Parr defendants' motion to dismiss Fiesta's wrongful foreclosure claim on the sole ground that section 305.007 barred the claim.

We sustain Fiesta's first cross-issue.[12]

### Post–Judgment Interest

In its third cross-issue, Fiesta argues that the trial court erred in entering the post-judgment rate of interest at 5% because by the time the judgment was signed "it had increased to 6.25%." *See* Tex. Fin.Code Ann. § 304.003 (Vernon

---

12. Having held that the trial court erred in granting the Parr defendants' motion to dismiss Fiesta's wrongful foreclosure claim on the ground that section 305.007 barred the claim, we need not address Fiesta's second cross-issue that the trial court erred in dismissing its wrongful foreclosure claim without first giving it the opportunity to amend its pleadings.

2006). Fiesta asserts that although the change in the interest rate was "called to the [c]ourt's attention and [it] agreed to change it," the court "inadvertently failed to modify the proposed judgment" to reflect the higher rate.

Fiesta concedes in its briefing that "there is no record that the trial court agreed to change the interest rate," but Fiesta believes that the Parr defendants' counsel would agree that the trial court intended "to substitute the new rate." However, in their briefing, the Parr defendants do not stipulate that the trial court intended to award Fiesta a higher post-judgment interest rate or that Fiesta timely and specifically called any such error to the attention of the trial court.

To present a complaint for appellate review, the record must show: (a) the complaint was presented to the trial court by a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context; and (b) the trial court ruled on the request. Tex.R.App. P. 33.1(a). Furthermore, to preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method. *See Dal–Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144–45 (Tex.App.-Dallas 2006, no pet.).

As conceded by Fiesta, the record does not support its assertion that it presented the trial court with any complaint regarding the post-judgment interest rate included in its judgment. Accordingly, we hold that Fiesta has not preserved this issue for our review. *See Keith,* 221 S.W.3d at 173 ("A complaint regarding the award of post-judgment interest must be preserved in the trial court by a motion to amend or to correct the judgment or by a motion for new trial.").

We overrule Fiesta's third cross-issue.

### Conclusion

We reverse the portion of the trial court's judgment awarding Fiesta $92,245.23 from the Partnership, Ken, and Corine for "charging" usurious interest in violation of section 305.001 of the Texas Finance Code and the portion of the judgment awarding Fiesta $101,400 from the Partnership, Ken, and Corine for "charging" and "receiving" usurious interest in violation of section 305.002 of the Texas Finance Code. We render judgment that Fiesta shall take nothing on its claims against the Parr defendants for "charging" usurious interest in violation of section 305.001 of the Texas Finance Code and "charging" and "receiving" usurious interest in violation of section 305.002 of the Texas Finance Code.

We further reverse the portion of the trial court's judgment granting Fiesta conditional appellate attorneys' fees. We further reverse the portion of the judgment dismissing Fiesta's wrongful foreclosure claim, and we remand the cause for proceedings consistent with this opinion on Fiesta's wrongful foreclosure claim.

We affirm the remainder of the judgment in all other respects, including the portion of the judgment awarding Fiesta $238,178.46 from Ken for "contracting for" usurious interest in violation of section 305.001 of the Texas Finance Code.