**Opinion issued January 17, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00434-CV

————————————

**NAI ("JACK") WANG AND WANG INVESTMENT HOUSTON PARTNERSHIP, Appellants**

**V.**

**JOSE GONZALEZ, ALL AMERICAN DEMOLITION, LLC, AND NELSON EQUIPMENT, LTD., Appellees**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-26214**

---

## MEMORANDUM OPINION

Appellants, Nai ("Jack") Wang and the Wang Investment Houston Partnership (collectively, "Wang"), sued appellees, Jose Gonzalez and All

American Demolition, LLC (collectively, "Gonzalez"), and Nelson Equipment, Ltd. ("Nelson"), for conversion of a Kobelco SK300LC Mark IV excavator. After the jury found that Wang and Gonzalez each had a 50% ownership interest in the excavator and that Nelson provided compensable storage services to Wang, both Wang and Nelson moved for judgment notwithstanding the verdict ("JNOV"). The trial court denied Wang's motion for JNOV but granted Nelson's motion for JNOV. It ruled, among other things, that Wang and Gonzalez both had 50% ownership interests in the excavator, that Nelson was entitled to $4,715 from Wang in storage fees for the excavator, that Nelson was entitled to $28,000 in attorney's fees plus $40,000 in conditional appellate attorney's fees, and that Gonzalez was entitled to $24,000 in attorney's fees plus $20,000 in conditional appellate attorney's fees.

In four issues, Wang contends that the trial court (1) erred in denying his motion for JNOV because no evidence was presented to support the jury's finding that Gonzalez had a 50% ownership interest in the excavator; (2) erred in denying his motion for JNOV and ruling that he take nothing against Gonzalez because he presented evidence that Gonzalez converted the excavator; (3) erred in granting Nelson's motion for JNOV because he presented some evidence that he never consented to storage fees and that he acted under duress in allowing the excavator

2

to be stored on Nelson's property; and (4) abused its discretion in awarding attorney's fees to Gonzalez and Nelson.

We affirm in part, and we reverse on the issue of Nelson's conditional appellate attorney's fees. With respect to the attorney's fees awarded for an appeal to this Court, we reinstate the verdict of the jury, and with respect to the attorney's fees awarded for an appeal to the Texas Supreme Court, we remand that issue for further proceedings consistent with this opinion.

## Background

In 2004, Wang, who is the managing partner of his family real estate partnership, owned two vacant motels that needed to be demolished: the Gulf Freeway Inn and the Hospitality Inn. Wang retained GBS Environmental ("GBS"), which, at the time, employed Gonzalez as a salesman, to remove asbestos from the Gulf Freeway Inn. GBS also submitted a bid for demolition of the Gulf Freeway Inn, but Wang rejected the bid, stating that the price was too high.

Around this time, Gonzalez left GBS to start his own demolition company, All American Demolition. Gonzalez had become acquainted with Wang during GBS's bidding on the asbestos removal and demolition of the Gulf Freeway Inn. According to Gonzalez, Wang knew that although Gonzalez was planning to operate his own demolition company, Gonzalez needed an excavator and did not

3

have the financial resources to purchase one. Gonzalez proposed that Wang purchase an excavator, and then Gonzalez would demolish the Gulf Freeway Inn "at cost." Gonzalez testified that he and Wang "had an agreement that [Gonzalez] was going to get that excavator after [he] demolished [Wang's] building, and [Wang] was going to benefit by saving money he didn't have to pay out of pocket [for the demolition]." Wang and Gonzalez ultimately purchased an excavator from Nelson, and the bill of sale listed both Wang's and Gonzalez's names, although only Wang provided funds for the excavator at the time of purchase.

Shortly after Gonzalez completed the demolition of the Gulf Freeway Inn, he began "asking [Wang] for the excavator." Wang then told Gonzalez that he owned another motel, the Hospitality Inn, that also needed demolition, and he requested that Gonzalez and his company also perform that demolition with the excavator. Gonzalez testified that Wang "led [him] to believe he was going to give [the excavator] to [him] after [he] demolished [Wang's] hotels." Gonzalez performed the Hospitality Inn job and then requested that Wang tender possession of the excavator to him. Wang did not turn over possession of the excavator, but he then "led [Gonzalez] to believe he was going to finance [Gonzalez's future demolition] projects."

The parties had no agreement that Gonzalez was to pay Wang for his use of the excavator on these additional demolition projects. Gonzalez used the excavator

4

on several additional projects, and Wang never submitted an invoice to Gonzalez for his use of the excavator on these projects. Gonzalez testified that, while he was using the excavator on these other projects, he repeatedly called Wang about taking possession of the excavator, but Wang "kept blowing [him] off." In 2006, Gonzalez demanded that Wang give him possession of the excavator, but Wang refused and replied, "I'm not going to mess with you." Gonzalez unequivocally testified, "I had an agreement that I was going to get that excavator after I demolished [Wang's] hotels. That's what we agreed on. He led me to believe that. That's why I—I want my machine."

On August 7, 2008, after several years of asking Wang to tender possession of the excavator to him, Gonzalez removed the excavator from Wang's property. Wang subsequently filed a police report, and, when a detective spoke with Gonzalez about Wang potentially pressing charges, Gonzalez showed him the bill of sale that he received when Wang originally purchased the excavator in 2004 and that had his name on it in addition to Wang's.

On cross-examination, Gonzalez denied that after he completed the initial motel demolitions for Wang he "rented" the excavator from Wang, but he acknowledged that when he used the excavator for additional jobs he "did try to make [Wang] some money since he did pay for the excavator," which is why he made several payments to Wang during this time period. Gonzalez testified that

5

although the check stubs for the payments made to Wang said "rental," the checks were labeled this way for All American Demolition's internal accounting purposes and this labeling was not meant to reflect that Gonzalez did not have an ownership interest in the excavator. Gonzalez stated that he was "pressured into paying [Wang for the excavator], paying him and paying him" and that Wang continued to demand money for Gonzalez's use of the excavator. He testified that Wang "kept leading [him] to believe that it was going to be over after that final payment, and it wasn't. It wasn't ever over."

Wang testified that he met Gonzalez when GBS bid for the asbestos removal job at the Gulf Freeway Inn. He also testified that Gonzalez told him that he had family members who could operate an excavator, and Gonzalez "convinced" him that buying an excavator was a better deal than renting one. Wang paid the entire purchase price for the excavator, and Gonzalez did not contribute financially at all. He also testified that Gonzalez persuaded him that after he completed the motel demolition he could use the excavator to bid on other demolition jobs and "make[] money for both of us." Wang believed that he would fund the cost of Gonzalez's future demolition projects and that, instead of paying interest on these loans, Gonzalez would pay Wang half of his profits from each job and a "fair rental for use of the excavator." According to Wang, Gonzalez told him that $10,000 per

month, or $2,000 per week, was a fair rental rate.[1]  He stated that he had no plans to sell the excavator to Gonzalez and that he and Gonzalez never discussed the possibility of Gonzalez's purchasing the excavator.  Wang had no intention of giving Gonzalez an ownership interest in the excavator.

On April 27, 2009, nearly nine months after Gonzalez took possession of the excavator, Wang applied for a temporary injunction, seeking to prohibit Gonzalez from, among other things, selling the excavator or removing it from its current location.  On May 18, 2009, the trial court issued the temporary injunction and prohibited Gonzalez from "removing the Excavator from its current location in Harris County, except as specifically authorized by order of this Court."

Al Nelson, the owner of Nelson Equipment ("Nelson"), testified that he had done business with Gonzalez and All American Demolition for several years before Nelson became involved in this dispute.  On December 12, 2008, Nelson began storing the excavator at its property at the request of the Houston Police Department, and the excavator remained on its property through the time of trial. Nelson assessed storage fees at a rate of $7.50 per day from December 12, 2008, until September 8, 2009.  After receiving a fax from Wang's counsel, requesting that Nelson comply with the May 18, 2009 temporary injunction requiring it to

---

[1]  Wang sought the recovery of $12,000 in rental costs for Gonzalez's use of the excavator on additional demolition projects.  He testified that Gonzalez did not pay any rental costs for any of the demolition projects that Wang financed.

7

keep the excavator on its property, Al Nelson informed Wang's counsel that Nelson was assessing storage fees. Nelson subsequently agreed to abate assessing storage fees from September 8, 2009, until the original trial setting of January 18, 2010. Nelson resumed assessing storage fees on January 19, 2010, and it assessed fees until October 14, 2010, the date Al Nelson testified at trial, at the rate of $10 per day. Nelson sought a total of $4,705 in storage fees from Wang.

Wang testified that he had no choice in determining where the excavator was going to be stored pending the resolution of the ownership dispute. He testified that he had "no prior agreement from anybody about the storage fee." He also stated that he had neither a written nor a verbal agreement with Nelson to pay storage fees.

Gonzalez's counsel testified that he was seeking $23,500 in trial-level attorney's fees, and he requested a total of $20,000 in conditional appellate attorney's fees, testifying that he believed $10,000 in fees for an appeal to an intermediate court of appeals and $10,000 in fees for a further appeal to the Texas Supreme Court was reasonable. Wang's counsel testified that she believed $20,000 in fees for an appeal to an intermediate court of appeals and $5,000 for a further appeal to the Texas Supreme Court was reasonable. Nelson's counsel testified that he had incurred $28,000 in attorney's fees through trial. Nelson's counsel did not testify concerning conditional appellate attorney's fees.

8

Question Number One in the jury charge asked the jury to determine whether Wang and Gonzalez had an agreement for Gonzalez to retain ownership of the excavator after he demolished Wang's motels. The jury answered "no." Question Number Three asked whether Wang and Gonzalez had an agreement for Gonzalez to pay rental charges of $2,000 per week and up to $10,000 per month for his use of the excavator, and the jury answered "yes." In Question Number Four, the jury found that Gonzalez failed to comply with the rental agreement, but the jury also found, in Question Number Five, that Gonzalez's failure to comply was excused. In Question Number Nine, the jury found that Wang provided compensable rental services for Gonzalez's use of the excavator on six projects, but, in Question Number Ten, it found that the reasonable value of these rental services was zero.

In Question Number Eleven, the jury found that Wang and Gonzalez each had a 50% ownership interest in the excavator. The jury then found, in Question Number Twelve, that Gonzalez did not convert the excavator in August 2008 when he removed the excavator from Wang's property. In Question Number Fourteen, the jury found that Nelson provided compensable storage services to Wang for storage of the excavator, and in Question Number Fifteen, the jury determined that the reasonable value of the compensable storage services equaled $100. The jury awarded, pursuant to Question Number Sixteen, $14,000 for trial-level attorney's

9

fees to Nelson, $10,000 in conditional appellate attorney's fees for an appeal to an intermediate court of appeal, and zero in conditional appellate attorney's fees for an appeal to the Texas Supreme Court. The jury also found, in Question Number Seventeen, that Wang consented to moving the excavator onto Nelson's property, but, in Question Number Eighteen, it found that Wang acted under duress when he so consented. The jury was instructed that "[a] person acts under 'duress' when he or she is compelled by improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with the person's exercise of free will and judgment."

Both Nelson and Wang moved for JNOV.[2] Nelson argued that the trial court should disregard the jury's answer to Question Number Fifteen, in which it awarded $100 as the reasonable value of the storage services that Nelson provided, because Nelson presented uncontroverted evidence, in the form of Al Nelson's testimony, that it provided $4,705 worth of storage services. Nelson also argued that the trial court should disregard the jury's answers to Question Number Sixteen, concerning Nelson's attorney's fees, because Nelson presented its

---

[2] Gonzalez did not file his own motion for JNOV; instead, he filed a response in opposition to Wang's motion and a request for entry of final judgment. In this motion, Gonzalez requested that the trial court render a declaratory judgment establishing that he had an ownership interest in the excavator pursuant to the jury's finding in Question Number Eleven. Gonzalez also requested that, pursuant to the Uniform Declaratory Judgments Act, the trial court award him $24,000 in trial attorney's fees and a total of $20,000 in conditional appellate attorney's fees.

10

counsel's undisputed testimony that it had incurred $28,000 in trial attorney's fees. It also argued that it had asked for $20,000 in conditional appellate attorney's fees for an appeal to an intermediate court of appeals, $15,000 for an appeal to the Texas Supreme Court, and $5,000 if a petition for rehearing were filed with the Texas Supreme Court.[3] Instead, the jury awarded $14,000 in trial-level attorney's fees and $10,000 for an appeal to an intermediate court of appeals.

Wang also moved for JNOV, arguing that the evidence established, as a matter of law, that Gonzalez did not have an ownership interest in the excavator and that Gonzalez converted the excavator. Wang also argued that the evidence was insufficient to support the verdict in favor of Nelson, specifically, insufficient evidence supported the jury's answers that Nelson provided compensable storage services, that the reasonable value of the storage services was $100, that Nelson was entitled to $14,000 in attorney's fees and $10,000 in conditional appellate attorney's fees, and that Wang consented to moving the excavator onto Nelson's property. Wang argued that the jury's answers on the four preceding questions were immaterial, because the jury also found, in Question Number Eighteen, that Wang consented to storing the excavator on Nelson's property under duress.

---

[3]     The record reflects that Nelson's attorney requested these amounts in closing argument, but he presented no testimony concerning appellate attorney's fees, and neither of the other attorneys testified that a total of $20,000 for an appeal to the Texas Supreme Court was reasonable.

Nelson filed a supplement to its motion for JNOV to address Wang's argument concerning the jury's duress finding. Nelson argued that it was entitled to JNOV on this issue because Wang presented no evidence that Nelson itself committed any wrongful acts or conduct that constituted duress. Nelson argued that the trial court should not have submitted Question Number Eighteen to the jury because duress is not a valid affirmative defense to its equitable quantum meruit claim for storage fees and because the question did not ask the jury to determine which party engaged in the threatening conduct that caused the alleged duress.

The trial court orally granted Nelson's motion for JNOV and denied Wang's motion. In its final judgment, the trial court affirmed the jury's finding on Question Number Eleven and ruled that Wang and Gonzalez each owned a 50% ownership interest in the excavator and that Wang shall take nothing by his claims against Gonzalez and Nelson. The court awarded Nelson $4,715 in storage fees, $28,000 in trial attorney's fees, and up to $40,000 in conditional appellate fees.[4] The trial court also awarded Gonzalez $24,000 in trial attorney's fees and up to $20,000 in conditional appellate attorney's fees. This appeal followed.

---

[4] In its final judgment, the trial court clarified that the storage fees award represented fees incurred from December 12, 2008, until October 15, 2010, the date that the trial concluded. Al Nelson testified the day before, on October 14, 2010, which is why there is a $10 discrepancy between the total Nelson testified that his company was seeking in storage fees and the amount the trial court ultimately awarded.

12

**Judgment Notwithstanding the Verdict**

In his first and second issues, Wang contends that the trial court erred in denying his motion for JNOV because (1) no evidence supported the jury's finding that Gonzalez had an ownership interest in the excavator and (2) he conclusively established that Gonzalez unlawfully converted the excavator. In his third issue, Wang contends that the trial court erred in granting Nelson's motion for JNOV concerning storage fees because he presented some evidence to support the jury's finding that he acted under duress in allowing the excavator to remain on Nelson's property.

### A.      *Standard of Review*

A trial court may disregard a jury's findings and render judgment notwithstanding the verdict only when a directed verdict would have been proper, and it may disregard any jury finding on a question that has no support in the evidence. TEX. R. CIV. P. 301; *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) ("A trial court may grant a judgment notwithstanding the verdict if there is no evidence to support one or more of the jury findings on issues necessary to liability."). A jury question is immaterial for the purpose of determining whether the trial court may disregard a jury finding when the question should not have been submitted or when it was properly submitted but has been

13

rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

A trial court properly enters a directed verdict (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent, or (2) when the evidence is insufficient to raise a material fact issue. *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied); *see Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (holding that court may direct verdict "if no evidence of probative force raises a fact issue on the material questions in the suit"). The trial court should grant a JNOV when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *B & W Supply*, 305 S.W.3d at 15.

In reviewing the rendition of JNOV, we must determine whether there is any evidence upon which the jury could have made the finding at issue. *See Tiller*, 121 S.W.3d at 713; *see also B & W Supply*, 305 S.W.3d at 15 (holding that we review JNOVs under no-evidence standard); *CDB Software, Inc. v. Kroll*, 992 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("We review the denial of CDB's motion [for JNOV] under the legal sufficiency standard."). We must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless

14

reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see Tiller,* 121 S.W.3d at 713 (holding that, in reviewing "no evidence" point, court views evidence in light that tends to support finding of disputed fact and disregards all evidence and inferences to contrary) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001)).

To sustain a challenge to the legal sufficiency of the evidence supporting a jury finding, the reviewing court must find that (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004). If some evidence supports the disregarded finding, the reviewing court must reverse the JNOV and render judgment on the verdict unless the appellee asserts cross-points showing grounds for a new trial. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 628 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see also B & W Supply*, 305 S.W.3d at 15 (holding that we must uphold jury's verdict and not trial court's judgment if more than scintilla of evidence supports jury's finding).

Similarly, when reviewing the denial of a motion for JNOV, if there is more than a scintilla of evidence to support the jury's findings, the trial court properly

denied the motion for JNOV. *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 813 (Tex. App.—Texarkana 2004, pet. denied); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 863 (Tex. App.—Austin 2001, pet. denied) (citing *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990)). We will affirm the jury's verdict if there is any evidence of probative value to support it. *Trinity Indus.*, 53 S.W.3d at 863 (citing *Int'l Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985)).

## B.    *Ownership of Excavator*

In his first issue, Wang contends that the trial court erroneously denied his motion for JNOV because the evidence conclusively established that Wang was entitled to complete ownership of the excavator. Wang contends that the only evidence that Gonzalez presented to establish his claim of ownership was the bill of sale from Nelson that listed both Wang and Gonzalez and Gonzalez's "own self-serving testimony."

Wang presents no authorities, however, to support his contention that this evidence is not competent evidence or that this evidence is not more than a scintilla of evidence that Gonzalez had an interest in the excavator. Both Wang and Gonzalez testified that, although Wang was the one who paid Nelson for the excavator, the bill of sale listed both of their names. Wang also testified that, although he paid the insurance premiums on the excavator, the policy was issued in

16

Gonzalez's name. Gonzalez testified that he and Wang verbally agreed that "[Gonzalez] was going to get that excavator after [he] demolished [Wang's] building, and [Wang] was going to benefit by saving money he didn't have to pay out of pocket [on the demolition]." Gonzalez testified that he repeatedly asked Wang to tender possession of the excavator, but Wang kept requiring that Gonzalez either perform additional demolition jobs for him or pay him additional funds. Gonzalez also testified that he made payments to Wang during the time that he was using the excavator on additional demolition jobs, but he denied that he was "renting" the excavator from Wang. Gonzalez unequivocally testified that he and Wang had an agreement whereby Gonzalez "was going to get that excavator after [he] demolished [Wang's] hotels. That's what we agreed on. He led me to believe that."

Although Gonzalez and Wang did not have a written agreement governing their relationship and their respective interests in the excavator, the lack of such an agreement does not render Gonzalez's testimony concerning his interest in the excavator legally insufficient. *See Malone v. Patel*, — S.W.3d —, No. 01-10-00739-CV, 2012 WL 1142251, at \*14 (Tex. App.—Houston [1st Dist.] Apr. 5, 2012, pet. filed) ("The failure to reduce an agreement to writing (as well as any proffered explanation for that failure) is relevant for the jury's consideration, but does not negate the legal sufficiency of the direct evidence of Malone's

17

expressions of agreement to be equal partners with Patel in Prescendo."). Gonzalez's direct and unequivocal testimony is some evidence supporting his claim that he had an ownership interest in the excavator. *See City of Keller*, 168 S.W.3d at 827 (holding that, in legal-sufficiency review, we view evidence in light most favorable to verdict, credit supporting evidence if reasonable jurors could do so, and disregard contrary evidence unless reasonable jurors could not); *Burns v. Rochon*, 190 S.W.3d 263, 267 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence."). We conclude that, because some evidence supported the jury's finding in response to Question Number Eleven that Gonzalez had an ownership interest in the excavator, the trial court properly denied Wang's motion for JNOV concerning this finding. *See Cherokee Water Co.*, 145 S.W.3d at 813; *Trinity Indus.*, 53 S.W.3d at 863.

Wang also contends, in his first issue, that the jury's "no" answer to Question Number One, which asked the jury whether Wang had an agreement with Gonzalez for "Jose Gonzalez to retain ownership of the excavator in question after completion of the demolition of  [Wang's] motels," rendered Question Number Eleven immaterial.

18

The trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer*, 876 S.W.2d at 157. A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Id.* A jury question is also considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995).

Question Number One asked, "Did [Wang] have an agreement with Jose Gonzalez for Jose Gonzalez to retain ownership of the excavator in question after completion of the demolition of [Wang's] motels?" The jury answered "no." Question Number Eleven, which was expressly conditioned on a "no" answer to Question Number One, asked the jury to determine the percentage of Wang's and Gonzalez's respective ownership interests in the excavator. The jury responded "50%" for each party.

We agree with Gonzalez's assertion that a "no" answer to Question Number One does not necessarily render the jury's answer to Question Number Eleven immaterial. It is possible for the jury's answers to these two questions to be read consistently with each other. For example, Question Number One can be interpreted as asking whether Wang and Gonzalez had an agreement that, after he demolished the two motels, Gonzalez would retain *sole* ownership of the

19

excavator. The jury could believe that Gonzalez retained an interest in the excavator but that Wang also retained an interest, and thus Gonzalez did not retain sole ownership. If the jury reached this conclusion, it would answer "no" to this question. The jury would then proceed to Question Number Eleven and determine Gonzalez's and Wang's respective ownership interests in the excavator. The answers to these questions, therefore, are consistent, and the jury's answer to Question Number One did not render its answer to Question Number Eleven immaterial.[5] *See Shamoun v. Shough*, 377 S.W.3d 63, 69 (Tex. App.—Dallas 2012, no pet. h.) ("[W]e may not strike down jury answers on the basis of conflict if there is any reasonable basis on which they can be reconciled.").

We overrule Wang's first issue.

## C. Conversion of Excavator

In his second issue, Wang contends that the trial court erroneously denied his motion for JNOV because the evidence conclusively established that Gonzalez unlawfully converted the excavator.

---

[5] To the extent Wang contends that the answers to Question Number One and Question Number Eleven are irreconcilable, we note that, to preserve this complaint for appellate review, Wang had to object to the purported conflict between the answers before the trial court discharged the jury. *See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 324 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Coastal Chem., Inc. v. Brown*, 35 S.W.3d 90, 99 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also* TEX. R. CIV. P. 295 ("If . . . the answers to the [jury] questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the . . . conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.").

Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Burns*, 190 S.W.3d at 267–68 (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)); *Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied). To establish a claim for conversion, the plaintiff must prove that (1) he owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, his rights as an owner; (3) he demanded return of the property; and (4) the defendant refused to return the property. *Burns*, 190 S.W.3d at 268 (citing *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied)). If, however, the defendant proves that he has superior title or that he is entitled to the property pursuant to an agreement, the plaintiff cannot maintain the action for conversion. *See Tex. Diamond Int'l, Inc. v. Tiffany & Co.*, 47 S.W.3d 589, 591 (Tex. App.—San Antonio 2001, pet. denied); *Enduro Oil Co. v. Parish & Ellison*, 834 S.W.2d 547, 549 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

We have already held, in addressing Wang's first issue, that Gonzalez presented some evidence that he and Wang had an agreement that Gonzalez would have an interest in the excavator after he completed the demolition of Wang's

21

motels. The jury ultimately found that Wang and Gonzalez had equal ownership interests in the excavator, and we have held that sufficient evidence supports the jury's determination. We therefore conclude that Gonzalez presented some evidence that he and Wang were equally entitled to possession of the excavator pursuant to an agreement between them. Because Gonzalez presented some evidence of this defense to a conversion action, we conclude that Wang did not establish that he was entitled to judgment as a matter of law on this cause of action, and, therefore, the trial court properly denied Wang's motion for JNOV. *See Tex. Diamond Int'l*, 47 S.W.3d at 591 (holding that plaintiff cannot maintain conversion action when defendant establishes it has superior title); *Enduro Oil Co.*, 834 S.W.2d at 549 (holding that plaintiff cannot maintain conversion action when defendant is entitled to property pursuant to agreement); *see also Cherokee Water Co.*, 145 S.W.3d at 813 (holding that trial court properly denies motion for JNOV when more than scintilla of evidence supports jury's finding).

We overrule Wang's second issue.

### D.  *Storage Fees*

In his third issue, Wang contends that the jury's answer to Question Number Eighteen, that Wang consented to allowing the excavator to be stored on Nelson's property only under duress, renders the jury's other findings that Nelson was entitled to storage fees and attorney's fees immaterial. Wang also contends that

22

the trial court erred in granting Nelson's motion for JNOV and setting aside the jury's award of $100 in storage fees to Nelson.

To establish a claim for duress, a plaintiff must demonstrate: (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *Kalyanaram v. Burck*, 225 S.W.3d 291, 301 (Tex. App.—El Paso 2006, no pet.); *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Texas Supreme Court has "characterized duress as the result of threats which render persons incapable of exercising their free agency and which destroy the power to withhold consent." *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005). A common element of duress is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment. *See id.* at 878–79. Duress must be based on wrongful acts or conduct committed by the actual opposing party and not by a third party. *See Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (discussing economic duress); *see also Kalyanaram*, 225 S.W.3d at 302

23

("Duress or undue influence can suffice to set aside a contract, but it is well-settled that it must originate from one who is a party to the contract. Courts will not invalidate contracts on grounds of duress when the alleged duress derives from a third person who has no involvement with the opposite party to the contract.") (internal citations omitted); *Wright v. Sydow*, 173 S.W.3d 534, 544 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("[Economic duress] requires both the acts or conduct of the opposing party and the necessities of the alleged victim or his fear of what a third person might do. The victim's plight alone will not suffice; it must be coupled with the bad acts of the transgressor.") (internal citations omitted). What constitutes duress is a question of law for the court. *Wright*, 173 S.W.3d at 544.

In its supplement to its motion for JNOV, Nelson argued that the trial court should disregard the jury's answer to Question Number Eighteen because it was immaterial and should not have been submitted to the jury. Nelson argued that Wang had presented no evidence that any alleged duress suffered by Wang was caused by any wrongful actions or conduct committed by *Nelson*. To the contrary, Nelson argued that it "had no choice but to continue to store the equipment pursuant to a temporary injunction order issued at Wang's insistence." The trial court sustained this argument and awarded Nelson $4,715 in storage fees.

24

In contending that the trial court erred in granting Nelson's motion for JNOV, Wang points to his testimony that he did not have a choice as to where the excavator would be stored pending resolution of the ownership issue and that he did not have an agreement with Nelson to store the excavator at Nelson's property. He argues that he did not consent to the storage at Nelson's property, but he points to no evidence that any wrongful or unlawful actions of *Nelson* caused Wang to incur the storage fees.

Al Nelson testified that Houston Police Department officers brought the excavator to Nelson's property for storage after the officers recovered the excavator from Gonzalez in December 2008. Nelson, therefore, did not play any role, for example, in soliciting the storage of the excavator on its property, and, indeed, Al Nelson testified that he did not want to store the excavator because he is "not in the storage business," but he agreed to do so because of his pre-existing business relationship with Gonzalez. Furthermore, on May 18, 2009, the trial court issued a temporary injunction on Wang's motion, which, among other things, prevented Gonzalez from "removing the Excavator from its current location in Harris County, except as specifically authorized by order of this Court." At the time this order was entered, the excavator was located on Nelson's property. There is no indication in the record that the trial court ever modified this requirement or lifted this injunction. Thus, by continuing to store the excavator at its property,

Nelson was not committing any wrongful or unlawful acts. Wang cites no authority for the proposition that Nelson was not entitled to charge fees for storing a piece of equipment that it was obligated by court order to store on its property.

We therefore conclude that because Wang presented no evidence that Nelson committed any wrongful or unlawful act leading to the storage of the excavator on its property, the trial court correctly disregarded the jury's answer to Question Number Eighteen, finding duress, and granted Nelson's motion for JNOV.

Wang also contends in his third issue that the trial court erred in granting Nelson's motion for JNOV setting aside the jury's answer to Question Number Fifteen, in which it found that $100 was the reasonable value of the compensable storage services that Nelson provided, and awarding $4,715 in storage fees.

When determining damages, the jury has discretion to award a damages amount within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.) ("The jury generally has broad discretion to award damages within the range of evidence presented at trial."). Although the jury's findings may not be set aside merely because its reasoning in arriving at the amount of damages is unclear, there must be a rational basis for its damages calculation. *See Shamoun*, 377 S.W.3d at 69; *Vela*, 203 S.W.3d at 49;

26

*Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied). When, however, a precise method for determining damages is presented, the jury may not arbitrarily assess an amount that is not authorized or supported by the trial evidence. *See Vela*, 203 S.W.3d at 49; *see also Mayberry*, 948 S.W.2d at 317 (distinguishing between cases in which evidence supports range of damages awards and cases in which two distinct damage-award options are presented). A jury's damages award may be disregarded if the amount assessed "was not the result of a deliberate and conscientious conviction in the minds of the jury and the court." *First State Bank v. Keilman*, 851 S.W.2d 914, 930–31 (Tex. App.—Austin 1993, writ denied) (quoting *Mills v. Jackson*, 711 S.W.2d 427, 431 (Tex. App.—Fort Worth 1986, no writ)).

Here, Nelson presented the precise amount of storage fees that it incurred, and Al Nelson testified regarding how he reached that amount. Nelson charged $7.50 per day from December 12, 2008, to September 8, 2009, for a total of $2,205, and it charged $10 per day from January 19, 2010, to October 14, 2010, for a total of $2,680. These amounts totaled $4,705, but, in response to Question Number Fifteen, the jury awarded only $100 as the reasonable value for compensable storage services. The trial court granted Nelson's motion for JNOV, disregarded the jury's answer to Question Number Fifteen, and awarded $4,715 to Nelson in storage fees.

The only evidence presented at trial, which was uncontroverted by Wang, was that Nelson incurred $4,715 in storage fees. There was no evidence presented to support the jury's finding that the reasonable value of Nelson's storage services was only $100.

We therefore conclude that because no evidence supported the jury's storage-fees award to Nelson, the trial court properly disregarded the jury's answer and awarded $4,715 in storage fees to Nelson. *See Tiller*, 121 S.W.3d at 713 (holding that, in reviewing rendition of JNOV, we examine record to determine whether there is any evidence upon which jury could have made its finding); *see also First State Bank*, 851 S.W.2d at 931 ("We conclude that the jury's finding of $360 in unauthorized interest is inexplicable in light of the evidence presented at trial. There is no rational basis for the jury's calculation. Except for the fact that the jury's figure falls *in between* the Keilmans' $7,161.44 figure and FSB's $0 figure, it appears that the jury pulled its answer out of a hat.").

We overrule Wang's third issue.

### Attorney's Fees

Finally, in his fourth issue, Wang contends that the trial court abused its discretion in awarding attorney's fees because he is entitled to a judgment in his favor, and therefore neither Gonzalez nor Nelson is entitled to attorney's fees. Wang also specifically contends that the trial court abused its discretion in

28

awarding Nelson a greater amount of attorney's fees in its final judgment than the jury awarded in its verdict.

### A. Gonzalez's Attorney's Fees

The trial court awarded attorney's fees to Gonzalez pursuant to the Uniform Declaratory Judgments Act ("UDJA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (Vernon 2008). Under the UDJA, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009. This decision to award of attorney's fees to the prevailing party is within the trial court's discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). The UDJA thus "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id.* at 21. A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 706 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We have already determined that the trial court properly entered judgment in favor of Gonzalez on Wang's claims; therefore, the trial court did not abuse its discretion in awarding attorney's fees to Gonzalez. Wang also contends, however, that Gonzalez offered no evidence to support the amount of the fee award.

29

In its final judgment, the trial court awarded Gonzalez $24,000 in attorney's fees through the time of trial and a total of $20,000 in conditional appellate attorney's fees. At trial, Gonzalez's attorney testified concerning each of the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). He also testified that Gonzalez had incurred $23,500 in attorney's fees as of the time of his testimony, and he estimated that Gonzalez would incur an additional $20,000 in appellate attorney's fees. The trial court also admitted into evidence an itemized billing statement reflecting the actions taken on Gonzalez's behalf and the amounts charged.

We conclude that Gonzalez presented evidence supporting the amount of attorney's fees that the trial court awarded to him in its final judgment. *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no pet.) (holding that attorney's testimony concerning *Arthur Andersen* factors, total number of hours spent on case, and hourly rate was sufficient to support fee award); *see also French v. Moore*, 169 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A trial court, sitting as finder of fact, may award attorney's fees as a matter of law based upon an interested witness' testimony if it is accurate, clear, direct, and positive, and not contradicted by any other witness, other evidence, or attendant circumstances . . . .'"). We hold, therefore, that the trial court did not abuse its

discretion in awarding Gonzalez $24,000 in trial-level attorney's fees and $20,000 in total conditional appellate attorney's fees.

### B. Nelson's Attorney's Fees

With regard to Nelson, we have already concluded that the trial court correctly entered judgment in its favor. The jury awarded Nelson $14,000 in attorney's fees through trial and $10,000 in conditional appellate attorney's fees. The trial court then granted Nelson's motion for JNOV on the issue of attorney's fees, and it awarded Nelson $28,000 in trial-level attorney's fees, $20,000 in conditional appellate attorney's fees for an appeal to this Court, and a further $20,000 if the Texas Supreme Court grants a petition for review and affirms the trial court's judgment. Wang contends that no evidence supports the amount of this fee award.

### 1. Trial-Level Attorney's Fees

Generally, the testimony of an interested witness, such as a party to the suit, although not contradicted, does no more than raise a fact issue to be determined by the jury. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam). An exception to this rule is that "where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it

31

is taken as true, as a matter of law." *See id.*; *B & W Supply*, 305 S.W.3d at 20–21 (reversing trial court's decision to disregard jury's award of attorney's fees when attorney presented clear, direct, and uncontroverted testimony of amount of trial-level and reasonable appellate attorney's fees).

At trial, Nelson's counsel testified that Nelson had incurred over $28,000 in attorney's fees through the time of trial, and the trial court admitted Nelson's billing records reflecting the amount incurred. Neither Wang nor Gonzalez's counsel questioned Nelson's counsel about his billing records, and thus the testimony of Nelson's counsel was "clear, direct and positive" and uncontroverted. *See Ragsdale*, 801 S.W.2d at 882. As a result, the amount of Nelson's trial-level attorney's fees was established as a matter of law, and the jury had no discretion to award a different amount. *See id.*; *B & W Supply*, 305 S.W.3d at 20. We therefore conclude that the trial court correctly granted Nelson's motion for JNOV and disregarded the jury's award of trial-level attorney's fees.

### 2. *Conditional Appellate Attorney's Fees*

With respect to the conditional appellate attorney's fees, Nelson's counsel presented no testimony regarding what he thought a reasonable amount would be. Wang's counsel testified that she believed that $20,000 is a reasonable amount for an appeal to an intermediate court of appeals and that $5,000 is reasonable for an additional appeal to the Texas Supreme Court. Gonzalez's counsel testified that he

believed that $10,000 is a reasonable amount for an appeal to an intermediate court of appeals and that $10,000 is reasonable for a further appeal to the Texas Supreme Court. In Question Number Sixteen, the jury awarded Nelson $10,000 in conditional appellate attorney's fees for an appeal to an intermediate court of appeals and zero for a further appeal to the Texas Supreme Court. The trial court granted Nelson's motion for JNOV, disregarded the jury's answer to Question Number Sixteen, and awarded Nelson $20,000 for an appeal to this Court, $15,000 if a petition for review is filed with the Texas Supreme Court, and $5,000 if the Texas Supreme Court grants the petition for review and affirms the judgment of the trial court.

It is "well-settled" that the trial court's award of attorney's fees may include appellate attorney's fees. *C & K Invs. v. Fiesta Group, Inc.*, 248 S.W.3d 234, 251 (Tex. App.—Houston [1st Dist.] 2007, no pet.). There must, however, be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees. *See id.* at 252; *see also Gilbert v. City of El Paso*, 327 S.W.3d 332, 337 (Tex. App.—El Paso 2010, no pet.) ("[T]here must be evidence to support an award of attorney's fees on appeal."); *Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.—San Antonio 2002, pet. denied) ("A court does not have authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without the benefit of evidence.").

33

The jury had conflicting evidence from the two attorneys who testified concerning appellate attorney's fees regarding what amount constituted a reasonable conditional appellate fee award. Evidence before the jury, specifically, the testimony of Gonzalez's counsel, reflected that $10,000 was a reasonable amount of attorney's fees for an appeal to an intermediate court of appeals. Therefore, because some evidence in the record supported the jury's award, in Question Number Sixteen, of $10,000 for an appeal to this Court, the trial court erroneously granted Nelson's motion for JNOV on this point. *See Tiller*, 121 S.W.3d at 713 (holding that, in reviewing rendition of JNOV, we examine record to determine whether there is any evidence upon which jury could have made its finding).

With regard to the conditional award for appellate attorney's fees if Wang pursues an appeal to the Texas Supreme Court, testimony from Wang's attorney and Gonzalez's attorney reflects that some amount of fees is appropriate, although they disagreed on what they believed was a reasonable fee award. The jury awarded nothing, and the trial court disregarded this and awarded a total of $20,000 to Nelson in the event of an appeal to the Texas Supreme Court. Wang's attorney testified that $5,000 was appropriate for an appeal to the Texas Supreme Court, and Gonzalez testified that $10,000 was appropriate. No evidence in the record supports the trial court's determination that a total of $20,000 was

reasonable and necessary. *See C & K Invs.*, 248 S.W.3d at 252 (holding that there must be some evidence of reasonableness of fees for appellate work to support award of appellate attorney's fees).

Because no evidence supports either the jury's verdict or the trial court's final judgment as it relates to the amount of conditional appellate attorney's fees awarded to Nelson for an appeal to the Texas Supreme Court, we remand for a determination by the trial court of what amount is appropriate.[6]

We sustain Wang's fourth issue in part.

## Conclusion

We affirm the trial court's judgment on the merits of Wang's claims. We affirm the award of attorney's fees to Gonzalez and affirm the award of trial-level attorney's fees to Nelson. We reverse the trial court's rendition of JNOV with regard to Nelson's conditional appellate attorney's fees. With respect to the conditional fees for an appeal to this Court, we reinstate the verdict of the jury, and with respect to the conditional fees for a further appeal to the Texas Supreme

---

[6] In its second cross-point, Nelson contends that insufficient evidence supports the jury's attorney's fees award. Because we hold that the trial court erroneously granted Nelson's motion for JNOV with regard to the conditional appellate attorney's fees, but we also hold that no evidence supports the jury's verdict on attorney's fees for an appeal to the Texas Supreme Court, we sustain this cross-point in part. Because we affirm the trial court's award of storage fees and trial-level attorney's fees to Nelson, we do not address its first and third cross-points.

Court, we remand to the trial court for a determination of the appropriate amount of Nelson's fees.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.