FILED
15-0437
8/25/2015 9:01:26 PM
tex-6651778
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# NO. 15-0437

# IN THE SUPREME COURT OF TEXAS

_____

## TERESA GAROFOLO

### v.

## OCWEN LOAN SERVICING, LLC

_____

## On Certified Questions from the United States Court of Appeals for the Fifth Circuit

_____

## APPELLANT'S REPLY BRIEF

_____

KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                    i

INDEX TO AUTHORITIES                                                                ii

CAPTION                                                                              1

SUMMARY OF ARGUMENT                                                                  1

ARGUMENT & AUTHORITIES                                                              3

    Section 50(a)(6)(Q)(vii) Creates A Constitutional Obligation
    To Cancel and Return A Fully-Paid Note                         3

    Notice and Cure Provisions Applicable                          9

    "Holder" Subject to "Lender" Obligations                      10

    History of Section 50(a)(6)                                   12

    Consequence of Ocwen's Argument                               13

    Ocwen's "Absurdity Of Forfeiture" Argument                    16

    Breach Of Contract Claim                                      19

CONCLUSION                                                                         20

PRAYER                                                                             22

CERTIFICATE OF SERVICE                                                             23

CERTIFICATE OF COMPLIANCE                                                          23

# INDEX OF AUTHORITIES

## CASES

*Box v. First State Bank,* 340 BR 867 (2010) — 15

*C&K Investments v. Fiesta Group,* 248 S.W.3d 234
(Tex. App.—Houston [1st Dist.] 2007, no pet.) — 17

*Finance Commission of Texas v. Norwood,*
418 S.W.3d 566 (Tex. 2011) — 4, 6, 7, 16, 18

*Houston Sash & Door, Inc. v. Heaner,*
577 S.W.2d 217 (Tex. 1998) — 17

*Intercontinental Group Partnership v. KB Home Lone Star LP,*
295 S.W.3d 650, 655 n.26 (Tex. 2009) — 19

*Stringer v. Cendant Mortgage Corp.,*
23 S.W.3d 353 (Tex. 2000) — 2, 5

*Vincent v. Bank of America, N.A.,* 109 S.W.3d 856
(Tex. App.—Dallas 2003, pet. denied) — 7, 8

## CONSTITUTIONS AND STATUTES

75th Legislature, House Joint Resolution 31 — 12

TEX. CONST. Art. XVI §50(a) — 4, 12

TEX. CONST. Art. XVI §50(a)(6) — 4, 11, 12, 13, 14, 19

TEX. CONST. Art. XVI §50(a)(6)(Q) — 5

TEX. CONST. Art. XVI §50(a)(6)(Q)(vii) — passim

TEX. CONST. Art. XVI §50(a)(6)(Q)(x) — 4, 5, 9, 11, 12, 20

TEX. CONST. Art. XVI §50(a)(6)(Q)(x)(f) — 9, 10

TEX. CONST. Art. XVI §50(u)                                6, 7

ADMINISTRATIVE REGULATIONS

7 TAC §153.24                                              7-8

7 TAC §153.24(3)                                             9

NO. 15-0437

IN THE SUPREME COURT OF TEXAS
_____


TERESA GAROFOLO


v.


OCWEN LOAN SERVICING, LLC

_____
**On Certified Questions from the United States Court of**
**Appeals for the Fifth Circuit**

APPELLANT'S REPLY BRIEF
_____

Comes now Teresa Garofolo, appellant, and files this reply brief.

SUMMARY OF ARGUMENT

Ocwen argues that it has no constitutional obligation to cancel and return the promissory note and provide a release of lien upon full payment, in spite of the constitutional language to the contrary. Ocwen argues that all it must do to comply with the constitution is to recite those obligations in the

loan agreement, and then Ocwen can ignore those obligations with impunity. Ocwen is wrong.

The constitutional requirement to cancel and return the note upon full payment is a substantive constitutional obligation that must actually be performed. That conclusion is inescapable upon application of this Court's decision in *Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353 (Tex. 2000), a review of the language of the amendment itself, and the interpretation of that provision by the Texas Finance Commission. The requirement to cancel and return the note upon full payment is a substantive obligation of the lender and a substantive right of the borrower. It is not a matter of mere form with no real substance. A violation of that obligation results in forfeiture of all principal and interest under the Constitution.

Ocwen argues that the Court should not enforce the forfeiture provision in this instance because it would be "bad policy." The public policy of the state is expressed by the people in the state's Constitution. It is not the office of the Court to decide that the expressed public policy is wrong; it is the duty of the Court to enforce the public policy as expressed in the Constitution. The expressed public policy of the State is that uncorrected violations of constitutional obligations in home equity loans result in

2

forfeiture of all principal and interest by the lenders. The Court must apply that remedy in this case to comply with that expressed public policy.

The failure to cancel and return the promissory note is not only a constitutional violation, it is a breach of contract. Ocwen does not even argue that there is no breach of contract here—that is clear and undisputed. Ocwen simply argues that Garofolo cannot recover anything for that breach of contract because she has no actual damages from that breach. Actual damages are not required in this circumstance, and Garofolo does not seek to recover damages. The parties contracted for the remedy of forfeiture of all principal and interest for breach of the constitutional obligations. That is the remedy Garofolo seeks, and that is the remedy to which she is entitled.

Ocwen's tortured arguments aside, Ocwen breached both its constitutional obligations and its contractual obligations. The remedy is forfeiture of all principal and interest under both the Constitution and the contract.

## ARGUMENT & AUTHORITIES

### Section 50(a)(6)(Q)(vii) Creates A Constitutional Obligation To Cancel And Return A Fully-Paid Note

Ocwen's position is that TEX. CONST. Art. XVI §50(a)(6)(Q)(vii) does not create a constitutional obligation to cancel and return the promissory note upon full payment—Ocwen argues that the constitutional

3

provision merely requires that the parties include that term in their loan agreement. (Appellee's Brief pp. 8-15). There are several reasons that Ocwen is simply wrong.

Ocwen first points to the opening language of Article XVI §50(a) providing that "the homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for…(6) an extension of credit that…." complies with the provisions of that section. Ocwen then argues that such language necessarily means that the remedy of forfeiture must be related only to loan origination. Under Ocwen's premise, the only consequence of nonperformance of the constitutional obligations would be the failure to secure a lien. But Article XVI §50(a)(6) does more than that. As recognized by this court in *Finance Commission of Texas v. Norwood,* 418 S.W.3d 566 (Tex. 2011), the consequence of noncompliance is not only loss of the right of forced sale, but forfeiture of all principal and interest. Forfeiture under Article XVI §50(a)(6)(Q)(x) is not tied to failure of the lien but to failure to comply with lender's or holder's obligations under the extension of credit. The drafters did not make forfeiture dependent on failure to properly obtain a lien (which could only happen at origination) but rather on the failure of the lender or holder to comply with its *obligations*, recognizing that there was a

4

distinction between the creation of the lien and the obligations of the lender or holder.

The inclusion of "holder" in Section 50(a)(6)(Q)(x) also is significant. That section specifically references the lender's or holder's obligations under the extension of credit. If forfeiture were only intended to apply to infirmities at loan origination, the inclusion of "holder" in that provision would be nonsensical and superfluous. A subsequent holder cannot have any obligations at loan origination since there is no subsequent holder at that time.

This Court's opinion in *Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353 (Tex. 2000) recognizes the distinction between the requirements for creation of the lien and the obligations the lender (or holder) has to perform. The Court recognized that the constitutional provisions provide "substantive rights and obligations," and it did so in the context of Section 50(a)(6)(Q). Therefore, Subsection (Q) provides both substantive rights to the borrower and imposes substantive obligations on the lender. In order for Section 50(a)(6)(Q)(vii) to provide "substantive obligations" on the part of the lender or holder, it must necessarily mean that the lender or holder has an obligation under the Constitution to actually return the fully-paid promissory

note. No other interpretation would result in the imposition of "substantive" rights and obligations.

Ocwen argues that the provision simply means that the bank only has to include a promise to return the note in its loan documents, and then it is simply a matter of contract without any obligation to return the note under the Constitution. Ocwen highlights that position in its criticism of Garofolo's analysis of *Stringer*. Appellee's Brief p. 14. Ocwen characterizes the dispute between Ocwen and Garofolo as to the interpretation of Section 50(a)(6)(Q)(vii) thusly:

> Garofolo tries to read this statement to mean that Section 50(a)(6)(Q)(vii) is an ongoing obligation, rather than an obligation at the time the loan is made to include a provision in the loan documents that requires the lender to do the things set forth in Section 50(a)(6)(Q)(vii).

Ocwen argues that Section 50(a)(6)(Q)(vii) does not create a constitutional obligation to return the note upon full payment; Garofolo argues that it clearly does. As explained below, the Texas Finance Commission agrees with Garofolo's interpretation of Section 50(a)(6)(Q)(vii).

As discussed by the Court in *Norwood,* a 2003 amendment to the Constitution authorized the Legislature to delegate to a state agency the power to interpret certain provisions of the Texas Constitution governing home equity lending. TEX.CONST. Art. XVI §50(u) provides as follows:

The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)-(a)(7), (e)-(p), and (t) of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

    (1)    in effect at the time of the act or omission; and

    (2)    made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

In *Norwood,* the Court determined, among other things, that this Court is the final arbiter of what the constitutional provisions mean, but that the interpretations of the constitutional provisions by the Texas Finance Commission and the Credit Union Commission are on equal footing with decisions of the courts of appeal under Section 50(u). While Garofolo believes that *Vincent v. Bank of America, N.A.,* 109 S.W.3d 856 (Tex. App.—Dallas 2003, pet. denied) supports her position that forfeiture is available for the failure to return the fully-paid note, there are no decisions by courts of appeal as to whether Section 50(a)(6)(Q)(vii) creates a constitutional obligation on the lender or holder to return the note following full payment. But the Finance Commission has so ruled in its interpretation of that section.

The lender must cancel and return the note to the owner and give the owner a release of lien or a copy of an endorsement and assignment of the lien to another lender refinancing the loan within a reasonable time after termination and full payment of the loan. The lender or holder, at its option, may

provide the owner a release of lien or an endorsement and assignment of the lien to another lender refinancing the loan.

    (1)    The lender will perform these services and provide the documents required in 50(a)(6)(Q)(vii) without charge.

    (2)    This section does not require the lender to record or pay for the recordation of the release of lien.

    (3)    Thirty days is a reasonable time for the lender to perform the duties required under this section.

    (4)    An affidavit of lost or imaged note, or equivalent, may be returned to the owner in lieu of the original note, if the original note has been lost or imaged.

7 TAC §153.24

The Finance Commission did not interpret Section 50(a)(6)(Q)(vii) as " an obligation at the time the loan is made to include a provision in the loan documents that requires the lender to do the things set forth in Section 50(a)(6)(Q)(vii)" as urged by Ocwen. Rather the Finance Commission interpreted it to be an ongoing obligation to cancel and return the promissory note upon payment.

The Finance Commission has recognized that the lender has the post-origination obligation to cancel and return the note. In *Stringer* this Court recognized that Section 50(a)(6)(Q) provides substantive rights and obligations. *Vincent* recognizes that borrowers are entitled to forfeiture for the breach of a constitutionally mandated loan provision. The conclusion from these authorities is inescapable—lenders and holders have a

8

constitutional obligation to cancel and return the note upon full payment, the breach of which results in forfeiture of all principal and interest.

Notice And Cure Provisions Applicable

Ocwen argues that the banks get a free pass to breach their constitutional obligation to cancel and return the note because Ocwen thinks application of the notice and cure provisions in this circumstance is not clear. To the contrary, the necessary cure steps in this instance are straightforward.

Following full payment of the note, Ocwen must cancel and return the note to Garofolo and provide Garofolo with a release of lien within a reasonable time. The Finance Commission has determined that thirty days is a reasonable time to accomplish that task. 7 TAC §153.24(3) As to notice, all that Section 50(a)(6)(Q)(x) requires is that the lender or holder be "notified" of the lender's failure to comply with its obligations. No particular form of notice is specified in the Constitution, but some form of notice of failure to comply is required. The lender or holder then has sixty days in which to "correct the failure to comply." That subsection lists six methods to cure the failure to comply, depending on the nature of the failure. If Ocwen wanted to "cure" its failure to timely return the fully-paid promissory note, it would do so under Subsection (f):

(f) If the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section.

Since the promissory note was fully paid, there is no "remaining term of the loan" to refinance. Owen would cure its failure to comply by paying Garofolo $1,000. If Ocwen did not return the note at that time, it would remain in breach of its Constitutional obligations since it still had not returned the note, and would be subject to another notification of its failure to comply. Therefore, Ocwen would cure its failure under Section 50(a)(6)(Q)(x)(f) by paying Garofolo $1,000, and must return the fully-paid note to avoid remaining in violation—neither of which it did. This "cure" is not rewriting the constitutional provision; it is simply applying it.

### "Holder" Subject To "Lender" Obligations

Ocwen argues that it cannot be liable for forfeiture as the holder of the fully-paid promissory note because the obligation to return the promissory note in Section 50(a)(6)(Q)(vii) is the lender's obligation, and Ocwen is a subsequent holder. At the time of loan origination, all of the obligations are the lender's obligations. At that time, those obligations include not only all

of the requirements necessary to make the loan compliant with the Constitution at the time of closing of the loan but also the obligation to return the note and provide the borrower a release of lien when the note is paid in full. When that note and security agreement are negotiated to a subsequent holder, that lender's obligation as stated in Section 50(a)(6)(Q)(vii) becomes an obligation of the holder. That lender's obligation is then the holder's obligation referenced in Section 50(a)(6)(Q)(x). In response to Garofolo's point that the obligation to cancel and return the note and provide a lien release are the only obligations a subsequent holder could have, Ocwen strains to argue that the obligation to return the note is in fact not the only obligation that a holder could have under Section 50(a)(6). Ocwen argues that a holder has an *obligation* to cure under Section 50(a)(6)(Q)(x). But a holder does not have such an obligation—it has a *right* to cure to avoid forfeiture. That is significantly different from an obligation to cure. The holder will face the consequence of forfeiture if it fails to cure, but the holder does not have a constitutional obligation to do so.

A review of the requirements of Section 50(a)(6) reveals that the only *obligation* that must be fulfilled *after* loan origination is to cancel and return the note and provide a release of lien upon full payment of the note.

Cancelling and returning the note and providing a release of lien are the only obligations a holder can have since it is the only obligation that must be performed after loan origination. There is no other obligation in Section 50(a)(6) that could be a holder's obligation as referenced in Section 50(a)(6)(Q)(vii). Since Section 50(a)(6)(Q)(x) provides for forfeiture for failure of a holder to comply with the holder's obligations, and the only obligation a subsequent holder could have would be to cancel and return the note, the obvious intent of the drafters was for the holder to be subject to forfeiture for failure to cancel and return the note upon full payment.

## History of Section 50(a)(6)

Ocwen paints with a broad brush in arguing that forfeiture in these circumstance is "contrary to the history of Section 50(a)." Appellee's Brief p. 15. If looking at history, the history of Section 50(a) generally is not what the court should focus on. If looking at history, what the court must focus on is the history of the home equity loan amendment, Section 50(a)(6). From its first introduction in the 75th Legislature, House Joint Resolution 31 included a forfeiture provision. Previous attempts to pass legislation allowing home equity loans had not included sufficient protection of consumers and had uniformly failed to pass. The House Research Organization interpreted the proposed amendment as requiring the return of

the note upon full payment, and interpreted the amendments to require forfeiture in the event a lender or holder failed to comply with its obligations. The Finance Commission of Texas has interpreted the Section 50(a)(6)(Q)(vii) to constitute an obligation to cancel and return the fully-paid note. The conclusion one must draw from this is that the consumer protections incorporated in the amendment, including the return of the note and the forfeiture provisions, were important and integral parts of the amendment, and were so interpreted both before and after adoption of the amendment. Ocwen is critical of Garofolo's interpretation of that history, but offers nothing to the contrary.

The Consequences of Ocwen's Argument

Ocwen's position is that all the Constitution requires is that the loan documents comply with the requirements in Section 50(a)(6). Under Ocwen's theory, if the documents say the right things, then the lien is valid and there can be no forfeiture. As Garofolo pointed out, that elevates form over substance and allows unscrupulous lenders to violate the constitutional requirements with no constitutional ramifications.

Garofolo pointed out in her opening brief that the lender could get the borrower to assign wages, require the proceeds to be used to pay off a prohibited debt, or sign a confession of judgment—all of which are

prohibited actions. Without any explanation, Ocwen simply says that is not true, because then the loan would not comply with the Constitution regardless of what the loan documents say. But Ocwen also takes the position is that as long as the loan agreement as originally entered into complies with the constitutional requirements, there is no constitutional violation subject to forfeiture. Ocwen is talking out of both sides of its mouth—it cannot have it both ways. Taking Ocwen's position at face value, if it had a borrower execute an assignment of wages, but then had the note and security agreement recite that no assignment of wages was required, there would not be a constitutional violation. The lien would be valid and there could be no forfeiture. The borrower would be relegated to a breach of contract claim. That was clearly not what was intended by the drafters of Section 50(a)(6).

Ocwen then makes the confusing argument that oral agreements to engage in the prohibited conduct would be unenforceable. But that is beside the point. In the example above, the unscrupulous lender would have the assignment of wages signed at the time of closing (or before), and the note and security agreement signed by the borrower at closing would simply recite that no assignment of wages was required. The loan agreement would comply with the constitution, and under the Ocwen approach the lien would

be valid and no forfeiture implicated because "the loan agreement originally entered into by the parties complies with the constitutional requirements."

If the court were to adopt Ocwen's position that compliance with the constitutional requirements is to be judged only by the loan documents executed at closing, the loan agreement could recite that the borrower was not required to sign documents with blanks in them, but the borrower could actually sign blank documents at closing. Under Ocwen's theory, there is no constitutional violation because the loan agreement says there was no violation. Ocwen's approach makes the recitations in the loan agreement trump reality.

What actually happens matters. In *Box v. First State Bank,* 340 B.R. 867 (2010), the loan documents recited that the borrower was not required to pay a debt to the same lender—but the borrower actually was required to pay a prior debt to the same lender. Under Ocwen's approach, there would be no constitutional violation and the lien would be valid because the documents recited that the borrower had not been required to do so. The court in *Box* looked past the loan agreement to the actual performance of the constitutional obligations and determined that the loan was noncompliant and the lien invalid. If the court had adopted Ocwen's approach, the

opposite result would have occurred, and Box would have been left with nothing other than a breach of contract claim.

Ocwen's "Absurdity Of Forfeiture" Argument

Ocwen urges the court to reject forfeiture under these circumstances because Ocwen thinks forfeiture is absurd for blatant violations of the constitution. Ocwen ignores that the Constitution specifically provides for this forfeiture, and urges the court to reject forfeiture because it is "bad policy." Appellee's Brief p. 28. But it is not for the Court to decide whether forfeiture for uncorrected violations of the Constitution is wise—the public policy of the state is expressed in its Constitution. As the Court noted in *Norwood* when discussing the constitutional limitations on the place of loan closing:

> Whether so stringent a restriction is good policy is not an issue for the Commissions or this Court to consider.
> *Norwood* at 588

The legislature and the people of Texas decided that forfeiture in these circumstances was the public policy of the state, and the court cannot refuse forfeiture because it is perceived by the Court as "bad policy" and the Court believes that the voters of Texas were wrong.

As an additional "policy" argument for denying the forfeiture that the people of Texas directed for constitutional violations by lenders, Ocwen

16

conjures up a bugbear of lending-shutdown or increased interest costs if the court follows the Constitution. There is nothing to support that argument, and the argument is irrelevant. The lenders were well aware of the terms of constitution when they got into the home equity loan business in Texas, and the forfeiture provisions have been in the Constitution since the amendment was first adopted in 1997. The fact is the lenders want to reap the profits available by making these loans, and are willing to take the risks necessary to be in that market space. Enforcing the Constitution as written will not drive the money-lenders from the market—it will just make them comply with their constitutional obligations, and compliance is not difficult. In fact, it is easy—simply return the note when it is paid.

Past experience has shown that forfeitures do not prevent lenders from making loans in Texas. This state has had a long history of strong laws against usury, including forfeiture of all principal and multiples of interest paid for seriously exceeding the legal interest rate. See *Houston Sash & Door, Inc. v. Heaner,* 577 S.W.2d 217 (Tex. 1998); *C&K Investments v. Fiesta Group,* 248 S.W.3d 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The harshness of the penalties for usury did not have any effect on the availability of lending in Texas, and there is nothing to support Ocwen's

"public policy" argument that enforcing the forfeiture provision as written will have any different effect.

Ocwen refers to forfeiture as a "windfall" in various places in its brief. Garofolo acknowledges that forfeiture is a harsh remedy. However, in *Norwood* this Court recognized that forfeiture is the remedy provided by the Texas Constitution. Just because a remedy provided by law is harsh does not make it an unenforceable "windfall" against public policy.

Lenders have complete control over whether they are exposed to this forfeiture and can easily avoid it. All a lender has to do is cancel the note and return it to the borrower when the borrower pays off the note. Even when the lender neglects to do so at the time of full payment, the lender still suffers no consequences. The borrower must first notify the lender that the lender has not returned the note to the borrower, and then all the lender or holder must do to avoid forfeiture is to pull the note out of the file, mark it "cancelled," and return it to the borrower along with $1,000. The lender or holder has two full months after receiving the notice to do so. Holding Ocwen liable for forfeiture under these circumstances will not dry up home equity lending in Texas—all it will do is inform Ocwen that it must comply with its constitutional obligations.

The Breach Of Contract Claim

Ocwen's argument that it is not liable for its obvious and admitted breach of contract is that Garofolo suffered no actual damages. That might settle the issue if Garofolo sought to recover actual damages, but she does not. As reflected in the quote from *Intercontinental Group Partnership v. KB Home Lone Star L.P,* 295 S.W.3d 650, 655 n.26 (Tex. 2009) appearing in Appellees Brief at page 30, "money damages are essential in contract claims seeking money damages (<u>although not for contract claims seeking something else).</u>" Garofolo does not seek money damages—she seeks something else. Garofolo seeks forfeiture, and that is not money damages. In Paragraph 23 of the Security Agreement, Ocwen contracted to cancel and return the promissory note upon full payment. That is a constitutionally mandated loan provision, for which forfeiture is provided by the Constitution. Paragraph 19 of the Security Agreement in relevant part provides that:

> Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply, with any of with (*sic*) the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14,

and will give Lender 60 days after such notice has been received by Lender to comply. Only Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

The parties have contracted for forfeiture as the available remedy for failure to correct the noncompliance with the Lender's obligations under the extension of credit. As discussed in Garofolo's opening brief, forfeiture is a remedy that the parties can contract for, and that is what the parties contracted for here. Ocwen fails to even address those authorities, and its only citation concerning the necessity for damages recognizes that damages are not necessary when other relief is sought. The parties contracted for forfeiture for failure of the lender to comply with its obligations under the extension of credit as defined by the Constitution. The Constitution, as recognized by the Texas Finance Commission, imposes on the Lender the obligation to cancel and return the fully-paid promissory note. Therefore, the failure to do so is a breach of contract for which the contracted-for remedy (forfeiture) is available.

## CONCLUSION

Much as Ocwen wants to avoid the consequences of its failure to comply with the Constitution, it cannot do so. The requirement that Ocwen

cancel and return the note and provide Garofolo with a release of lien upon full payment of the note is clearly stated in the Constitution, and is not a mere matter of required document language as argued by Ocwen. The Texas Finance Commission has recognized those requirements as an actual constitutional obligation that the lender must perform, and any fair reading of the provisions leads to the same conclusion. Ocwen had a constitutional obligation to actually perform the things required in Section 50(a)(6)(Q)(vii).

Public policy does not prevent forfeiture in this circumstance; in fact, public policy requires it. The public policy of the state is expressed most purely in its Constitution, and the Texas Constitution provides for forfeiture when the holder of the home equity loan fails to cancel and return a fully paid note.

The failure to cancel and return the note and provide a lien release are not only constitutional violations, they are breaches of the contract between the parties. The contract specifically provides for the performance of those obligations upon payment of the note, and further provides for forfeiture for in the event of failure to comply with those obligations. Actual damages are neither necessary nor sought. Garofolo is entitled to forfeiture under a breach of contract theory.

21

PRAYER

WHEREFORE, Appellant Teresa Garofolo prays that the court answer the certified questions from the United States Court of Appeals for the Fifth Circuit in the affirmative, and confirm that a lender or holder violates Art. XVI §50(a)(6)(Q)(vii), becoming liable for forfeiture of principal and interest, when the loan agreement incorporates the protections of Section 50(a)(6)(Q)(vii) but the lender or holder fails to return the cancelled note and release of lien upon full payment and within 60 days after being informed of that failure; and that in the absence of actual damages, a lender or holder becomes liable for forfeiture of principal and interest under a breach of contract theory when the loan agreement incorporates the protections of Section 50(a)(6)(Q)(vii) but the lender or holder fails to return the cancelled note and release of lien upon full payment and within 60 days after the borrower informs the lender or holder of that failure.

KIDD LAW FIRM
819 West 11th Street
Austin, TX  78701
512-330-1709 (fax)

s/ Scott R. Kidd
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

## Certificate of Service

A copy of this brief has been electronically served on Robert Mowrey, W. Scott Hastings, Daron Janis, and David Foster.

s/Scott R. Kidd

## Certificate of Compliance

This brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4.  This brief was prepared using Microsoft Word for MAC, and exclusive of the exempted portions listed in Rule 9.4 contains 4805 words.

/s/Scott R. Kidd